UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION LEXINGTON

Civil Action No.: 12-CV-00035-DCR

MICHAEL DEAN VAUGHAN,                                                        Plaintiff

vs.

KENTUCKY ARMY NATIONAL GUARD, and                          Defendants
UNITED STATES DEPARTMENT OF THE ARMY

**MEMORANDUM IN SUPPORT OF DEFENADANTS' MOTION TO DISMISS**

*****      *****      *****      *****      *****

The United States Attorney makes this memorandum in support of the Motion to Dismiss

filed on behalf of the Defendants Kentucky Army National Guard and the United States

Department of the Army, agencies of the United States of America.

**INTRODUCTION**

Michael Dean Vaughan alleges that he was aggrieved when the Army took final agency

actions that were in violation of the administrative due process protections afforded him by Army

regulations.   The plaintiff identifies five final agency actions that he alleges were improper:   1)

production of a report of investigation conducted pursuant to Army Regulation (AR) 15-6 after

receiving allegations that the plaintiff had engaged in harassing conduct; 2) issuance of a letter of

reprimand to the plaintiff; 3) issuance of a relief-for-cause Officer Evaluation Report to the

plaintiff; 4) suspension of plaintiff's military security clearance; and 5) conducting an

administrative separation board to consider whether plaintiff's federal recognition as an Army

National Guard of the United States officer should be withdrawn.   The Court should dismiss

plaintiff's claim in entirety as each of the actions alleged by plaintiff either fail to satisfy the case

or controversy requirement for justifiability under the Constitution or fail to satisfy the

jurisdictional prerequisites of the Administrative Procedure Act (APA).

### FACTS

The court is familiar with the harassment allegations against plaintiff that gave rise to the

actions by the defendants that are the subject of this action.   They were extensively explored

during a hearing on a Motion to Quash that the Court held on September 28, 2010, in *Vaughan v.*

*Brigham*, E.D. KY No. 3:10-cv-00005-DCR.   During the hearing, both plaintiff and Ms. Mary

Elizabeth Brigham (AKA Kounovsky) testified under oath concerning Ms. Brigham's allegations

against plaintiff that she had reported to officers of the Kentucky Army National Guard in August

2009.   *See id.* Hearing Transcript, Dkt. # 47, at 17-46.   The hearing concerned plaintiff's third

party subpoenas *duces tecum* to officers of the Kentucky Army National Guard that received Ms.

Brigham's allegations, including Major James Richmond, the investigating officer who produced

the AR 15-6 report of investigation that is the focus of plaintiff's instant complaint.   *Id.* Dkt. #22,

at 6-7.

The memorandum appointing Major Richmond to conduct the investigation was dated

August 13, 2009, and in it his Battalion Commander directed Major Richmond to "perform an

investigation [in accordance with] AR 15-6, obtaining the details pertaining to the informal

commander's inquiry pertaining to harassment of Ms. Kounovsky by 1LT Michael Vaughan of the

207th Horizontal Company" of the 201st Engineer Battalion, Kentucky Army National Guard.[1]

---

[1]   This decision to conduct an informal commander's inquiry upon learning of Ms. Brigham's allegations that
plaintiff had harassed her were consistent with Army command doctrine, which requires:   "[Commanders] must
ensure that all reported offenses are quickly and thoroughly investigated.   You [the commander] may conduct the
preliminary inquiry yourself or direct someone else to do so."   Field Manual 27-1, Legal Guide for Commanders, at
3-1, *available at* http://armypubs.army.mil/doctrine/DR_pubs/DR_a/pdf/fm27_1.pdf.   With respect to Ms.
Brigham's initial report, it is also noteworthy that paragraph 3-1 of the field manual provides, "Anyone may report an
offense by a soldier to the local civilian police, the military police, or the unit commander."

*Id.* Dkt. #35-1, at 1.   Major Richmond documented his findings in a report of investigation, dated August 18, 2009, that he submitted to the Battalion Commander, Lieutenant Colonel Jerry Morrison.   Major Richmond found that plaintiff had harassed Ms. Brigham by sending her threatening e-mails and had engaged in a sexual relationship with her at a time when he was separated but still married to his wife.[2]   *Id.* Dkt. #35-2, at 3.

In addition to challenging the AR 15-6 investigation itself, the plaintiff essentially argues that any agency actions taken after the investigation was completed were necessarily flawed because of procedural irregularities with the investigation itself.   He alleges that he was denied the opportunity to rebut Ms. Brigham's allegations of harassment.   First Amended Complaint, Dkt. #1, *passim.*   Plaintiff's challenge to the five identified agency actions must fail for the following reasons.   First, the AR 15-6 informal investigation process is not an adverse administrative action in and of itself.   Second, the letter of reprimand issued to the plaintiff was a local corrective measure, and the document was never placed in the plaintiff's Official Military Personnel File; as such it was not a final agency action from which legal consequences flow. Third, the decision to issue the plaintiff a relief-for-cause Officer Evaluation Report that resulted in the plaintiff's removal from a military leadership position was not arbitrary and capricious, and moreover judicial review should be precluded by the intra-military doctrine or because it involved the exercise of subjective discretion reserved to the military agency.   Fourth, the temporary suspension of the plaintiff's military security clearance did not constitute final agency action,

---

[2]   After hearing the testimony of plaintiff and Ms. Brigham, the Court made similar findings as to harassment:

> THE COURT:   The proof that has been presented in the course of this hearing would indicate that the messages and the materials that were sent, the pornographic materials that were sent, were sent following the plaintiff making threats to the defendant in the case.   It is not logical for the Court to assume or to conclude that the e-mail messages or the materials would have been sent from anyone other than the plaintiff.   There's just no logical reason for the Court to draw that conclusion.

*Vaughan v. Brigham*, E.D. KY No. 3:10-cv-00005-DCR, Dkt. # 47, at 49.

which occurs only when the agency makes a formal revocation determination after administrative appeals have been exhausted; as such, it is not ripe for judicial review.   Fifth, contrary to the plaintiff's allegations, the agency has not taken final action against the plaintiff pursuant to an administrative separation board, to include a board to withdraw plaintiff's federal recognition as an officer of the Army National Guard of the United States; accordingly, this issue is not ripe for judicial review either.

As a final concern, judicial review of any of the foregoing military agency actions under the Administrative Procedure Act (APA) may be inappropriate at this time because the plaintiff has availed himself of the statutory remedy of 10 U.S.C. § 1552.   Pursuant to this statutory authority, plaintiff has a petition pending before the Army Board for Correction of Military Records (ABCMR or "Board"), wherein he has asked the Board to correct his military records to address the allegedly erroneous AR 15-6 report of investigation, the letter of reprimand, and the Officer Evaluation Report that are the subject of plaintiff's complaint.

### STANDARD OF REVIEW

Article III of the United States Constitution provides that federal courts may hear only justiciable cases or controversies. U.S. Const. Art. III, § 2; *see also Southwest Williamson County Community Ass'n, Inc. v. Slater*, 243 F.3d 270, 276 (6th Cir.2001).   In every federal case, the threshold question is whether the court has the judicial power to hear the suit.   *Warth v. Seldin*, 422 U.S. 490, 498 (1975).   It is the obligation of the court to determine whether a claim is justiciable.   *Southwest Williamson County Community Ass'n, Inc.*, 243 F.3d at 276.

Federal Rule of Civil Procedure 12(b)(1) provides that a party may move to dismiss an action for lack of subject matter jurisdiction.   In order to survive a Rule 12(b)(1) motion, the plaintiff has the burden of proving that the court has subject matter jurisdiction.   *Moir v. Greater*

*Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir.1986).  In reviewing a Rule 12(b)(1) motion challenging the factual basis for jurisdiction, "a trial court has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts."  *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990).  If a court determines that it lacks subject matter jurisdiction, "the court shall dismiss the action." Fed.R.Civ.P. 12(h)(3).

## ARGUMENT

There is presently no justiciable case or controversy over which this Court presently has subject matter jurisdiction.  Federal courts are vested with limited jurisdiction and may exercise only those powers authorized by the Constitution and statute.  *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).  The "case or controversy" requirement of Article III demands dismissal "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Murphy v. Hunt*, 455 U.S. 478, 481 (1982); *Mills v. Green*, 159 U.S. 651, 653 (1895) ("The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.").  This threshold jurisdictional requirement applies equally to APA claims because "nothing in the Administrative Procedure Act trumps a proper ripeness basis for denying judicial review."  *Zundel v. Holder*, ___F.3d___, 2012 WL 1570863, *5 (6th Cir. 2012).

As a threshold matter, "[o]nly final agency decisions are subject to review under the APA." *See Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 732 (1998).  "To obtain judicial review under the APA, [plaintiffs] must challenge a final agency action."  *Bennett v. Spear*, 520

5

U.S. 154, 174-75, 177-78 (1997); *see also Oregon Natural Desert Ass'n v. U.S. Forrest Service*, 465 F.3d 977, 982 (9th Cir. 2006) (citing 5 U.S.C. § 704).  "For an agency action to be final, the action must (1) 'mark the consummation of the agency's decision making process,' and (2) 'be one by which rights or obligations have been determined, or from which legal consequences will flow.'"  465 F.3d at 982.  Under the APA, "[t]he core question is whether the agency has completed its decision making process, and whether the result of that process is one that will directly affect the parties."  *Id.*  The plaintiff's allegations must describe actions that consummate the agency's decision making process and must also determine the rights or obligations of plaintiff or others.  *See American Civil Liberties Union v. National Security Agency*, 493 F.3d 644, 679 n. 37 (6th Cir. 2007).  Activities that lack this decision making component are more properly characterized as agency conduct, not agency action, that will not satisfy the jurisdictional prerequisite to filing a claim in federal district court under the APA.  *Id*. at 677-79 (complaint alleged only conduct and not reviewable agency action because the challenged activities did not constitute or resemble any agency rule, order, license, sanction, or relief).

Conversely, claims based on speculative future occurrences do not constitute final agency action and can never satisfy the jurisdictional predicate for APA jurisdiction.  "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Texas v. United States*, 523 U.S. 296, 300 (1998).  That is why courts "will not entertain a petition where pending administrative proceedings or further agency action might render the case moot and judicial review completely unnecessary."  *Association of American Medical Colleges v. United States*, 217 F.3d 770, 780 (9th Cir. 2000).

In cases where final agency action has been taken, the APA provides that a court shall set aside an agency's final decision only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Carabell v. U.S. Army Corps of Engineers*, 391 F.3d 704, 707 (6th Cir. 2004) (citing 5 U.S.C. § 706(2)(A)), *reversed on other grounds.* This standard of review is highly deferential, and the court is "not empowered to substitute its judgment for that of the agency." *Id.* (citing *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S. Ct. 814, 28 L.Ed.2d 136 (1971)). An agency's factual findings are conclusive if supported by substantial evidence, and an agency's interpretation of its own regulations is entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulatory text. *Id.* (*citing* 5 U.S.C. § 706(2)(E); *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945); *United States v. Cinemark USA, Inc.*, 348 F.3d 569, 578 (6th Cir. 2003)).

Plaintiff's challenge to each of Defendants actions must be considered to determine if there is indeed a present case or controversy.

**A. The AR 15-6 Report of Investigation Constituted Mere Agency Conduct, Not Final Agency Action that Consummated the Agency's Decision Making Process to Determine the Rights or Obligations of Plaintiff or Others**

Army Regulation 15-6 sets out an informal investigation process provides a fact-gathering tool for Army commanders; it is not a discrete administrative action pertaining to any particular individual. Although Lieutenant Colonel Morrison directed Major Richmond to conduct an informal investigation into Ms. Brigham's allegations, Army policy did not require him to do so before taking an adverse administrative action against plaintiff. Such a requirement would impede commanders' ability to exercise their military discretion to effectively and efficiently organize and administer their units. As stated in AR 15-6, "This regulation does not require that an investigation be conducted before adverse administrative action, such as relief for cause, can be

taken against an individual." Army Regulation 15-6, *Procedures for Investigation Officers and Boards of Officers*, ¶ 1-9a.[3]

"The primary function of any investigation or board of officers is to ascertain facts and to report them to the appointing authority." *Id.* ¶ 1-6. Because expediency is key, as the name implies, an officer conducting an informal investigation "may use whatever method [he or she] finds most efficient and effective for acquiring information." *Id.* ¶ 4-2. Unlike AR 15-6 formal investigations which provide substantial procedural safeguards to individuals named as the subject for investigation, called "respondents," similar rights do not exist with respect to individuals that may be interested in the outcome of an informal investigation, wherein "[n]o respondents will be designated and *no one is entitled to the rights of a respondent*." *Id.* ¶ 4-3.

This distinction is crucial to establish procedural rights, as explained in the first paragraph of the regulation: "In formal investigations the appointing authority may designate one or more persons as respondents in the investigation. Such a designation *has significant procedural implications*." *Id.* ¶ 1-8 (emphasis added). Among others, respondents' procedural protections include notice, the right to counsel, the right to attend a formal hearing, and the right to present evidence in rebuttal. *See id.* ¶¶ 5-5, 5-6. These same rights are not afforded to individuals not designated as respondents, to include those who are "interested persons" with respect to informal investigations under AR 15-6. Rather, such individual's right to procedural due process is only triggered when the appropriate military authority decides to take adverse administrative action against the individual pursuant to some other regulatory authority. *See id.* ¶ 1-9.

Because the AR 15-6 informal investigation simply provides factual information to the military appointing authority, no decision that would determine the right or obligation of any

---

[3] Army regulations are available for download at http://www.apd.army.mil/AdminPubs/BrowseRegulations.asp.

individual is contemplated or required upon completion of the investigation.   Consistent with the Sixth Circuit's decision in *American Civil Liberties Union v. National Security Agency*, this type of agency conduct is not a final agency action that satisfies the jurisdictional prerequisites for an APA claim.   *See* 493 F.3d 644, 679 n. 37 (6th Cir. 2007).   Accordingly, the Court should dismiss the plaintiff's challenge to the AR 15-6 informal investigation based on lack of subject matter jurisdiction under the APA.[4]

> **B.   The Letter of Reprimand Issued to Plaintiff on April 6, 2010, Was the Culmination of the Agency's Decision Making Process, But the Decision Did Not Determine Plaintiff's Rights or Obligations Because the Letter Was Not Filed in Plaintiff's Official Military Personnel File**

According to the declaration of the Chief of the Soldier Records Branch at the Army National Guard Readiness Center in Arlington, Virginia, she conducted a review of plaintiff's Official Military Personnel File (OMPF) on July 20, 2012.   *See* Exhibit A (Barry Declaration, July 24, 2012).   This review determined that "[n]o letter of reprimand is filed in 1LT Vaughan's OMPF."   *Id.*   As such, the letter issued to plaintiff could only have been filed in plaintiff's local records, or Military Personnel Records Jacket, where it would be filed "for a period not to exceed 3 years or until reassignment of the recipient to another general court-martial jurisdiction, whichever is sooner."   *See* AR 600-37, *Unfavorable Information*, ¶ 3-4a.   Therefore, the letter was only a locally filed measure and, because it was not filed in plaintiff's OMPF, the decision to file the letter was of only temporary import and not a decision from which permanent legal consequences will flow.

---

[4] To the extent that plaintiff alleges there may have been procedural errors or irregularities in the conduct and subsequent review of the AR 15-6 informal investigation, the defendants note that this is specifically addressed in the regulation:   "Effect of errors.   Generally, procedural errors or irregularities in an investigation or board do no invalidate the proceeding or any action based on it.   AR 15-6, ¶ 2-3c.

Judicial review of plaintiff's challenge to the letter of reprimand under the APA would also be inappropriate at this time because the plaintiff has recently availed himself of the statutory remedy of 10 U.S.C. § 1552 to appeal to the Secretary of the Army for a correction of his military records.   In this administrative petition, which is pending before ABCMR in Case No. AR 20120006999, the plaintiff has asked the ABCMR to correct his military records to address the allegedly erroneous AR 15-6 report of investigation, the letter of reprimand, and the Officer Evaluation Report that are being challenged in plaintiff's instant complaint before the Court. Because the ABCMR petition is pending on essentially the same facts and the ABCMR acts pursuant to the authority of the Secretary of the Army, agency final action arguably cannot occur until the ABCMR issues its final decision, thereby undermining APA jurisdiction for the instant complaint.

Although the Sixth Circuit does not require exhaustion of administrative remedies before a district court can exercise jurisdiction under the APA, Sixth Circuit precedent does provide district courts with discretion to do so as "a matter of sound judicial discretion."   *Bangura v. Hansen*, 434 F.3d 487, 494 (6th Cir. 2006) (citing *Dixie Fuel Co. v. Comm'r of Social Security*, 171 F.3d 1052, 1058-59 (6th Cir.1999) ([W]here Congress has not clearly required exhaustion, sound judicial discretion governs.").   It would be appropriate for the Court to require administrative exhaustion through ABCMR action in this case because plaintiff has a pending administrative petition before the ABCMR; plaintiff's petition is based on the same facts and he seeks from the ABCMR essentially the same remedy he is seeking from the Court; doing so would be in the interest of judicial economy; the ABCMR has statutory authority to confer monetary and equitable remedies that are not available to the Court under the APA; and the Court would still have jurisdiction to review any final ABCMR decision on these issues.   *See* 10 U.S.C. § 1552a-c; AR 15-185, *Army*

*Board for Correction of Military Records*; *see generally Seepe v. Department of the Navy* 518 F.2d 760 (6th Cir. 1975) (finding that Congress did not intend to deprive district courts of authority to review decisions of the Boards for Correction of Military Records).

**C.  The Officer Evaluation Report Issued to Plaintiff on April 9, 2010, Was a Final Agency Decision that Was Not Arbitrary and Capricious**

When a decision is made to remove an officer from his current position a "relief-for-cause Officer Evaluation Report" maybe created. As alleged, the plaintiff did receive a relief-for-cause Officer Evaluation Report, dated April 9, 2010, which was subsequently filed in plaintiff's OMPF. *See* Exhibit A (Barry Declaration, July 24, 2012).   Army evaluation policy provides the following general guidance on the bases for relief for cause Officer Evaluation Reports:

> Relief for cause is defined as an early release of an officer from a specific duty or assignment directed by superior authority and based on a decision that the officer has failed in his or her performance of duty.   In this regard, duty performance consists of the completion of assigned tasks in a competent manner and compliance at all times with the accepted professional officer standards shown in Part IV, DA Form 67-9 [which lists numerous character traits, including the Army Values]. These standards apply to conduct both on and off duty.

AR 623-105, *Officer Evaluation Reporting System*, ¶ 3-50.

According to the declaration of the Chief of the Soldier Records Branch at the Army National Guard Readiness Center, the Officer Evaluation Report documents that plaintiff was relieved for the following reasons:

> The Officer Evaluation Report does not indicate that 1LT Vaughan was being relieved from a command position, but it does indicate he was removed from a

11

leadership position.   The officer's rater annotated the basis for relief as:   "1LT Vaughan is receiving a referred report due to poor decision making and lack of moral character," and his senior rater listed the basis as:   "1LT Vaughan made some decisions that violate the Army Values.   These decisions show poor character and do not reflect the leadership position he is assigned as a commissioned officer."

Exhibit A (Barry Declaration, July 24, 2012).   The rater and senior rater performing the evaluation thus list four reasons for relieving plaintiff:   poor character that was detrimental to his leadership position, poor decision making, lack of moral character, and violating the Army's core values, specifically the value of integrity.   The evaluation does not indicate that plaintiff was being relieved for any specific incident or act of misconduct; rather, the rater and senior rater articulate several broad deficiencies of character that are counter to what Army policy defines as accepted—and required—professional officer standards.   *See generally* Field Manual 22-100, *Army Leadership*, ch. 4 ("Character, a person's moral and ethical qualities, helps determine what is right and gives a leader motivation to do what is appropriate, regardless of the circumstances or the consequences.").

Of note, the evaluation makes no reference to an investigation conducted under AR 15-6 or other authority, nor does it refer to any instance of harassing conduct or an inappropriate relationship, *i.e.*, the topics of the August 2009 AR 15-6 informal investigation.   For this reason, plaintiff's assertion that the Officer Evaluation Report was invalided because he did not receive and have an opportunity to rebut the AR 15-6 investigation is misplaced.   Moreover, plaintiff was afforded his regulatory right to review and submit matters in response to the relief for cause Officer Evaluation Report at the time it was issued, but he failed to do so.   Exhibit B at 1-3

(Frodge Declaration, July 19, 2012).   In addition, there is no document in plaintiff's OMPF to indicate that he has "appealed the Officer Evaluation Report to the Officer Special Review Board of the Department of the Army, although he may do so within five years of the date of the report pursuant to Army Regulation 623-105, chapter 6."   Exhibit A (Barry Declaration, July 24, 2012).

Because the agency final action was consistent with Army policy and supported by the facts articulated above, the defendants maintain that issuance of the relief for cause Officer Evaluation Report was not arbitrary and capricious.   The defendants further assert that the military decision to remove an officer from a position based on leadership deficiencies should not be subject to judicial review for the following reasons.

First, the doctrine of military immunity counsels against such review.   As the Supreme Court stated in *Orloff v. Willoughby*,

> [Judges] are not given the task of running the Army.   The responsibility for setting up channels through which . . . grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates.   The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters.

345 U.S. 83, 93-94 (1953).   The doctrine has been consistently upheld in the Sixth Circuit.   *See, e.g.*, *Major v. United States*, 835 F.2d 641 (6th Cir. 1987).   Defendants submit that unit-level leadership determinations and assignments are legitimate Army matters that should be reserved to military officials.

Second, titles 10 and 32, U.S. Code, confer broad military authorities that arguably commit agency action to make military assignment decisions to military discretion pursuant to 5 U.S.C. § 701(a), which provides that the APA does not apply where agency action is committed to agency discretion by law.   *See Hoke Co., Inc. v. Tennessee Valley Authority*, 854 F.2d 820, 826 (6th Cir.

1988) (finding that one of the Tennessee Valley Authority's authorizing statutes vested the agency with substantial discretion to award contracts).   "Agency action generally is considered committed to agency discretion when there is 'no law to apply, . . . when there are no standards, definitions, or other grants of power [that] deny or require action . . . or confine an agency within limits as required by the Constitution."   *Diebold v. United States*, 947 F.2d 787, 789 (6th Cir. 1991) (citing S. Doc. No. 248, 79th Cong., 2d Sess. 212 (1946)).

Finally, as previously discussed with respect to the letter of reprimand, it would be appropriate for the Court to require administrative exhaustion through ABCMR action with respect to the Officer Evaluation Report because plaintiff has a pending administrative petition before the ABCMR; plaintiff's petition is based on the same facts and he seeks from the ABCMR essentially the same remedy he is seeking from the Court; doing so would be in the interest of judicial economy; the ABCMR has statutory authority to confer monetary and equitable remedies that are not available to the Court under the APA; and the Court would still have jurisdiction to review any final ABCMR decision on these issues.

**D.   There Has Been No Culmination of the Agency's Decision Making Process With Respect to Plaintiff's Security Clearance**

The plaintiff's security clearance challenge is clearly premature because final agency action has not yet occurred.   As such, the issue is not ripe for the Court's judicial review.   *See Zundel v. Holder*, ___F.3d___, 2012 WL 1570863, *5 (6th Cir. 2012) ("[N]othing in the [APA] trumps a proper ripeness basis for denying judicial review.").   Ultimately, the Court may not pass judgment on a hypothetical set of facts, or render a legal opinion in the form of declaratory judgment divorced from a real and present legal dispute.   *See In re Coleman*, 560 F.3d 1000, 1005

(9th Cir. 2009) ("Where a dispute hangs on future contingencies that may or may not occur, it may be too impermissibly speculative to present a justiciable controversy.").

Although plaintiff's security clearance has been suspended since March 8, 2011, *see* Exhibit C (Harris Declaration, July 20, 2012), by agency definition suspension is "[t]he *temporary* withdrawal of a person's eligibility for access to classified information." AR 380-67, *Personnel Security Program*, Glossary (emphasis added). In contrast, a revocation is "[t]he cancellation of a person's eligibility for access to classified information." *Id.* Only designated officials at the Army's Central Clearance Facility (CCF) in Fort Meade, Maryland, are authorized to revoke a Security Clearance. *Id.* para. 8-6a. Revocation is an unfavorable administrative action that may only be taken after the Soldier receives a "letter of intent" from CCF explaining the basis for the proposed action, and an opportunity to reply in writing to address issues raised in the CCF letter of intent. *Id.* para. 8-6a-b. On February 24, 2012, a proposal to revoke plaintiff's security clearance was submitted to CCF. Exhibit C at 2 (Harris Declaration, July 20, 2012). On May 31, 2012, the plaintiff's rebuttal in response to the proposed revocation was submitted to CCF, and on July 18, 2012, plaintiff's supplemental rebuttal with supporting documents was forwarded to CCF. *Id.*

After the CCF receives and considers the Soldier's response, it must issue a written response within 60 to 90 days, and the response must state the reason for CCF's final determination. *Id*. para. 8-6c. After receiving CCF's final letter of determination, the Soldier may then appeal the CCF determination to Headquarters, Department of the Army (HQDA), and such appeals must be made within 60 days. *Id.* para. 8-6d. After the HQDA makes its determination, no further appeal is authorized in Army policy. *Id.* Because the plaintiff's supplemental rebuttal was forwarded to CCF on July 18, 2012, it is anticipated that final agency

action regarding plaintiff's security clearance will be taken no later than October 18, 2012. Accordingly, potential APA jurisdiction will not attach until the date of that final agency action.

**E.   There Has Been No Culmination of the Agency's Decision Making Process With Respect to an Administrative Separation Board Proceeding**

For identical reasons as with plaintiff's security clearance, no justiciable controversy is presented with respect to plaintiff's claims about an Army administrative separation board, specifically a board to withdraw plaintiff's federal recognition as an officer of the Army National Guard of the United States.   Because final agency action has not occurred with respect to any such administrative separation board, this issue is not ripe for the Court's judicial review either.  *See* Exhibit A (Barry Declaration, July 20, 2012) (reviewing plaintiff's OMPF and commenting that "[t]here is no record of final action pursuant to an administrative separation board, to include a board to withdraw federal recognition as an officer of the Army National Guard of the United States.").

Such "Withdrawal of Federal Recognition" (WOFR) boards are convened by the Army pursuant to the authority of 32 U.S.C. § 323 and National Guard Regulation 635-101, *Efficiency and Physical Fitness Boards*.   Major General Tonini, Adjutant General of the Kentucky National Guard, recommended that the Commanding General of 1st Army direct that a WOFR board be convened to consider whether plaintiff's federal recognition should be withdrawn.   *See* Exhibit D (1st Army Declaration, July, 2012).   Lieutenant General Bednarek, the Commanding General of 1st Army, concurred with this recommendation, and on May 26, 2011, directed that a WOFR board convene.  *Id.*   On July 9, 2011, a WOFR board convened at Lieutenant General Bednarek's direction using formal board procedures to consider evidence regarding the plaintiff's eligibility

16

for continued military service, and the board made findings and recommendations to the convening authority based on that evidence.  *Id.*

On March 26, 2012, after reviewing the board results, Lieutenant General Bednarek determined that the board was legally deficient because it had failed to make factual findings concerning the specific allegations of misconduct that were identified in the board's convening order.  *Id.* As a result, on March 26, 2012, Lieutenant General Bednarek directed that a second WOFR board convene.[5]  *Id.*  Beginning on May 2, 2012, however, the convening of the second board was delayed after plaintiff filed a Motion for Emergency Temporary Restraining Order And/Or Preliminary Injunction to prevent 1st Army from proceeding with the board.  *See* Case No. 1-12-cv-00710-RMC.   Assuming the second WOFR board will eventually be convened, the board's results will be reviewed for legal sufficiency, and the Commanding General of 1st Army will then take final agency action to approve or disapprove the board's results.   As with plaintiff's security clearance, potential APA jurisdiction with respect to the second WOFR board will not attach until the date of final agency action on the board's results.

### F.  Estoppel

The compliant sets forth a count that invokes equitable estoppel.   The argument runs that by the alleged conduct of the Defendants they intended for Vaughan to understand that the allegations that were investigated through the informal investigation AR-15 procedure that the report of that investigation would not be used against him and that he in reliance on that

---

[5]   Contrary to the plaintiff's assertions, the Fifth Amendment prohibition against double jeopardy applies only to criminal proceedings conducted by the same sovereign.  *See*  U.S. CONST. Art. V. ("nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb"); *see generally United States v. Stokes*, 12 M.J. 229 (C.M.A. 1982) (discussing double jeopardy in the context of federal court martial proceedings).   As an additional point of clarification, WOFR boards are administrative proceedings convened pursuant to 32 U.S.C. § 709; they are not criminal proceedings conducted under the federal Uniform Code of Military Justice, 10 U.S.C. §§ 801-946, nor are they state criminal proceedings conducted pursuant to the military justice provisions of a particular State's code.

understanding has not rebutted that report.   This argument rests upon an understanding that the AR-15 report is a prerequisite for the actions taken against Vaughan and that the Army cannot act unless and until it has a report of a properly conducted investigation that Vaughan has been given a copy and an opportunity to rebut the report itself.   Vaughan treats the informal investigative process as if it is a formal procedure that has specific due process requirements and is required for any action against him.   The Defendant disagrees with this view of the situation.

Estoppel is mentioned here in this motion not to seek a final resolution of that claim but rather to say that to the extent the estoppel maybe said to rise to challenge this motion to dismiss for lack of jurisdiction that estoppel cannot extend the jurisdiction of the court.   *Fisher v. Peters*, 249 F3d 433 (6th Cir. 2001).   In that case the court goes on to recite that under *Heckler v. Community Health Services*, 467 U.S. 51 at 60 (1984) and its progeny that something more than the ordinary requirements for estoppel are required to estop the government.   The party attempting to estop the government bears a very heavy burden.   Affirmative misconduct must be alleged.   While plaintiff certainly characterizes the government's actions that way he is plainly arguing that if there is a failure that it must be motivated by malice.   There is no direct allegation.

## CONCLUSION

In light of the foregoing, the defendants respectfully moves this Court to dismiss the complaint in its entirety based on lack of subject matter jurisdiction and to grant such further relief that the Court deems necessary and appropriate.

Respectfully Submitted,

Kerry B. Harvey
United States Attorney

 /s/ David E. Middleton
David E. Middleton
Assistant U.S. Attorney
260 West Vine Suite 300
Lexington KY 40507-1612
(859) 685-4830
david.middleton@usdoj.gov

## CERTIFICATE OF SERVICE

I certify I electronically filed this document with the clerk of the court by using the

CM/ECF system which caused electronic service on all parties whose attorneys are in the system.

I further certify that I mailed a copy of this document by regular U.S. Mail to:

Michael Dean Vaughan
2010 Scott Blvd.
Covington, KY   41014

On August 3, 2012.

 /s/ David E. Middleton
David E. Middleton
Assistant U.S. Attorney