**Army Regulation 600–37**

Personnel—General

# Unfavorable Information

Headquarters
Department of the Army
Washington, DC
19 December 1986

**UNCLASSIFIED**

# *SUMMARY of CHANGE*

AR 600-37
Unfavorable Information

This revision -

o Redesignates chapter 5, Responsibilities, as chapter 2, and changes the numbers of chapters 2 through 4 to 3 through 5.

o Deletes authority for MACOMs to establish suitability evaluation boards for the purpose of determining the disposition of unfavorable information (chap 2).

o Authorizes officers frocked to brigadier general to issue and direct fiing of administrative letters of reprimand (chap 3).

o Authorizes enlisted supervisors to issue letters of reprimand, but restricts filing (chap 3).

o Requires that documents that serve as the basis for letters of reprimand be referred to the recipient (chap 3).

o Deletes portions pertaining to the use of unfavorable information in various files for the purpose of considering bars to favorable personnel actions (chap 4 and 5).

o Further defines the organization and procedures of the DA Suitability Evaluation Board with respect to the filing of unfavorable information in the OMPF (chap 6).

o Further defines the procedures to appeal for the removal of unfavorable information from the OMPF (chap 7).

o Sets forth (chap 7) new information to supplement AR 27-10 with respect to petitioning for the transfer of records of nonjudicial punishment to the restricted portion of the OMPF on the basis - -

  --Intent having been served.

  --Being in the best interests of the Army.

o Deletes chapter 8.

o Corrects errors in para 3-4d(1) stated in the ERRATA sheet dated 1987.

Case: 3:12-cv-00035-DCR    Doc #: 23-4    Filed: 08/14/12    Page: 3 of 21 - Page ID#: 419

Headquarters
Department of the Army
Washington, DC
19 December 1986

**\*Army Regulation 600–37**

**Effective 20 January 1987**

Personnel—General

# Unfavorable Information

By Order of the Secretary of the Army:

JOHN A. WICKHAM, JR.
*General, United States Army*
*Chief of Staff*

Official:

R. L. DILWORTH
*Brigadier General, United States Army*
*The Adjutant General*

**History.** The original form of this regulation was published on 19 December 1986. Since that time, an errata sheet was issued in 1987 to amend errors in the original text. This UPDATE printing incorporated all of those changes directly into the body of text. Because the structure of the entire revised text has been reorganized, no attempt has been made to highlight changes from the earlier regulation dated 15 November 1980.

**Summary.** This regulation prescribes policies and procedures regarding unfavorable information considered for inclusion in official personnel files.

**Applicability.** This regulation applies to all officer and enlisted personnel in the Active Army, Army National Guard (ARNG) and the U.S. Army Reserve (USAR).

**Proponent and exception authority. Impact on New Manning System.** This regulation does not contain information that affects the New Manning System.

**Army management control process.** This regulation is subject to the requirements of AR 11–2. It contains internal control provisions but does not contain checklists for conducting internal control reviews. These checklists are being developed and will be published at a later date.

**Supplementation.** Supplementation of this regulation and establishment of forms other than DA forms are prohibited without prior approval from the Office of the Deputy Chief of Staff of Personnel, HQDA (DAPE–MPO), WASH DC 20310–0300.

**Interim changes.** Interim changes to this publication are not official unless they are authenticated by The Adjutant General. Users will destroy the interim changes on their expiration dates unless sooner superseded or rescinded.

**Suggested improvements.** The proponent agency of this regulation is the Office of the Deputy Chief of Staff for Personnel. Users are invited to send comments and suggested improvements on DA Form 2028 (Recommended Changes to Publications and Blank Forms direct to HQDA (DAPE–MPO), WASH DC 20310–0300.

**Distribution.** This issue is distributed in accordance with DA Form 12–9A–R requirements for 600-series publications. The number of copies distributed to a given subscriber is the number of copies requested in Block 382 of the subscriber's DA Form 12–9A–R. AR 600–37 distribution is A for the Active Army, ARNG, and USAR. Existing account quantities will be adjusted and new account quantities will be established upon receipt of a signed UPDATE subscription form from the publications account holder.

**Contents** (Listed by paragraph and page number)

**Chapter 1**
**General,** *page 1*
Purpose • 1–1, *page 1*
References • 1–2, *page 1*
Explanation of abbreviations and terms • 1–3, *page 1*
Objectives • 1–4, *page 1*

**Chapter 2**
**Responsibilities,** *page 1*
Major commanders • 2–1, *page 1*
Deputy Chief of Staff for Personnel • 2–2, *page 1*

\*This regulation supersedes AR 600–37, 15 November 1980.

# UNCLASSIFIED

## Contents—Continued

Department of the Army Suitability Evaluation Board • 2–3, *page 2*
Assistant Chief of Staff for Intelligence • 2–4, *page 2*
Army Staff agencies • 2–5, *page 2*
Law enforcement, personnel security, and intelligence agencies • 2–6, *page 2*

### Chapter 3
### Unfavorable Information in Official Personnel Files, *page 3*
General • 3–1, *page 3*
Policies • 3–2, *page 3*
Filing of information exempt from the referral procedure • 3–3, *page 3*
Filing of nonpunitive administrative letters of reprimand, admonition, or censure in official personnel files • 3–4, *page 4*
Anonymous communications • 3–5, *page 5*
Referral of information • 3–6, *page 5*

### Chapter 4
### Unfavorable Information in Intelligence and Personnel Security Files, *page 5*
Unresolved unfavorable information • 4–1, *page 5*
Security information • 4–2, *page 6*
Security clearance • 4–3, *page 6*
Resolution of unfavorable information in intelligence and personnel security files • 4–4, *page 6*
Access to intelligence and personnel security files • 4–5, *page 6*
Use of intelligence and personnel security files in personnel actions. • 4–6, *page 6*

### Chapter 5
### Unfavorable Information in Army Law Enforcement Files, *page 7*
Authorities for filing and using unfavorable information • 5–1, *page 7*
Disposition of information in law enforcement files • 5–2, *page 7*
Access to law enforcement investigative files • 5–3, *page 7*

### Chapter 6
### Organization and Procedures of the Department of the Army Suitability Evaluation Board (DASEB), *page 8*
Board membership and voting procedures • 6–1, *page 8*
Adverse suitability information • 6–2, *page 8*
DASEB review of case records • 6–3, *page 8*
DASEB filing determinations • 6–4, *page 8*

### Chapter 7
### Appeals and Petitions, *page 9*
Removal of unfavorable information from official personnel files • 7–1, *page 9*
Policies and standards • 7–2, *page 9*
Processing appeals and petitions—OMPF • 7–3, *page 10*
Processing appeals—MPRJ • 7–4, *page 10*
Amendment rights • 7–5, *page 10*
Correction of military records • 7–6, *page 10*

**Appendix A.** Related Publicatios, *page 12*

**Glossary**

## Chapter 1
## General

### 1–1. Purpose
*a.* This regulation sets forth policies and procedures to—

(1) Authorize placement of unfavorable information about Army members in individual official personnel files.

(2) Ensure that unfavorable information that is unsubstantiated, irrelevant, untimely, or incomplete is not filed in individual official personnel files.

(3) Ensure that the best interests of both the Army and the soldiers are served by authorizing unfavorable information to be placed in and, when appropriate, removed from official personnel files.

*b.* This regulation also outlines primary staff responsibility for the following (and comparable) offices at all table of organization and equipment and table of distribution and allowances staff levels:

(1) Major commands.

(2) Office, Deputy Chief of Staff for Personnel (ODCSPER).

(3) Department of the Army (DA) Suitability Evaluation Board (DASEB).

(4) Office, Assistant Chief of Staff for Intelligence (ACSI).

(5) HQDA Staff agencies.

(6) Law enforcement, personnel security, and intelligence agencies.

### 1–2. References
Related publications are listed in appendix A.

### 1–3. Explanation of abbreviations and terms
Abbreviations and special terms used in this regulation are explained in the glossary.

### 1–4. Objectives
Objectives of this regulation are to—

*a.* Apply fair and just standards to all soldiers.

*b.* Protect the rights of individual soldiers and, at the same time, permit the Army to consider all available relevant information when choosing soldiers for positions of leadership, trust, and responsibility.

*c.* Prevent adverse personnel action based on unsubstantiated derogatory information or mistaken identity.

*d.* Provide a means of correcting injustices if they occur.

*e.* Ensure that soldiers of poor moral character are not continued in the Service or advanced to positions of leadership, trust, and responsibility.

## Chapter 2
## Responsibilities

### 2–1. Major commanders
Major commanders will—

*a.* Ensure that subordinate commanders concerned are properly informed and take actions prescribed in chapters 4 and 5 of this regulation with reference to unfavorable information concerning members of their commands.

*b.* Refer cases to the DASEB, when, because of unusual circumstances or complexities, unfavorable information of a serious nature concerning members or former members of their commands cannot properly be acted upon in accordance with their authority.

### 2–2. Deputy Chief of Staff for Personnel
The DCSPER will—

*a.* Establish the DASEB as a continuing board under the supervision of the Director of Military Personnel Management (DMPM), ODCSPER, to make determinations about—

(1) The filing of unfavorable information in the OMPF.

(2) Removing information under appeal and petition procedures in chapter 7.

*b.* Monitor DASEB membership and appoint a president as required.

*c.* Prescribe policies governing operations of the DASEB.

*d.* Approve, disapprove, refer to higher authority, or direct proper action on all adverse DASEB determinations concerning the filing of unfavorable information in a soldier's OMPF. Also, the DCSPER is authorized to direct similar actions on all other DASEB determinations as deemed proper (ensuring compliance with para 3–6).

*e.* Monitor and coordinate all DASEB activities not otherwise prescribed.

*Note.*

The DMPM, ODCSPER, is delegated authority to act on behalf of the DCSPER for the responsibilities in *b* through *e* above, and to further delegate elements of this authority other than that approving the filing of unfavorable information in a soldier's OMPF.

## 2–3. Department of the Army Suitability Evaluation Board

The DASEB—

*a.* When cases are referred for deliberation, determines whether unfavorable information should be filed in the performance portion of the OMPF. After deliberation, the DASEB may also recommend whether or not separation or elimination action should be initiated.

*b.* Initiates flagging action under AR 600–31 pending a final decision on the proposed filing of unfavorable information in the OMPF.

*c.* Recommends to the DMPM, ODCSPER, the filing of unfavorable information in cases in which the recipient has not satisfactorily explained that information after being given an opportunity to do so. The DASEB will not recommend filing of unfavorable information that has not been referred to the recipient, even if such filing would be otherwise permissible under this regulation.

*d.* Reviews and evaluates evidence presented to support appeals for removing unfavorable information from the performance portion of the OMPF.

*e.* Revises, alters, or removes from the OMPF unfavorable information covered by this regulation that is determined upon appeal to be unjust or untrue, in part or in whole (see chap 7).

*f.* Transfers from the performance to the restricted portion of the OMPF those administrative letters of reprimand, admonition, or censure that are determined upon appeal to have served their intended purpose, when such transfer would be in the best interest of the Army. Transfer of such letters is subject to stipulations noted in paragraph 7–2*b*(1), (2), (3), and (4).

*g.* Transfers from the performance to the restricted portion of the OMPF records of nonjudicial punishment (Article 15) that are determined upon petition to have served their intended purpose when such transfer would be in the best interest of the Army. Transfer of such records is subject to stipulations noted in paragraph 7–2*c*(1) and (2).

## 2–4. Assistant Chief of Staff for Intelligence

ACSI will—

*a.* Ensure that the U.S. Army Intelligence and Security Command (USAISC) provides assistance needed by the DASEB by making files available as required.

*b.* Set forth procedures to release information from intelligence and personnel security files to commanders and the DASEB.

## 2–5. Army Staff agencies

Army Staff agencies will—

*a.* Screen official records continuously for suitability information and refer cases that they are unable to resolve to the DASEB.

*b.* Take action needed to carry out the DASEB or DCSPER decision on cases that have been reviewed or referred to them by higher authority.

## 2–6. Law enforcement, personnel security, and intelligence agencies

Agencies responsible for releasing information from intelligence, personnel security, and investigative files will act under the procedures governing the use of investigative records outlined in this regulation. (AR 190–45, AR 340–21, AR 381–45, AR 40–66, and AR 40–400 also apply.)

*a.* Law enforcement agencies will (according to chapter 5 of this regulation, AR 190–45, and AR 195–2)—

(1) Advise the DASEB (or other proper HQDA adjudicating agency), upon request, when unfavorable information provided for criminal justice action exists on an individual.

(2) Provide file copies (or extracts thereof) to these requesters, as appropriate.

(3) Ensure that the decisions of adjudicating agencies relative to information provided are attached to the file report.

*b.* Commander, U.S. Army Central Personnel Security Clearance Facility (CCF) will (under chap 3 of this regulation and AR 604–5)—

(1) Advise the DASEB (or other proper HQDA adjudicating agency) regarding unfavorable information or cases of denial or revocation of security clearance involving senior enlisted (E6 or above), commissioned, or warrant officer personnel.

(2) With the exception of U.S. Army Investigative Records Repository (USAIRR) dossiers, provide file copies or information to major commanders, the DASEB, or other HQDA adjudicating agencies when requested. USAIRR dossiers may be requested by the above agencies in accordance with AR 381–45.

(3) Provide Notification concerning all cases of denial or revocation of security clearance involving senior enlisted (E6 or above), commissioned, or warrant officer personnel to the proper personnel management agency at the U.S. Army Military Personnel Center (MILPERCEN), the U.S. Army Reserve Personnel Center (ARPERCEN), or the National Guard Bureau (NGB).

(4) Ensure that unfavorable information received after review by an adjudicating agency is identifiable for later review.

## Chapter 3
## Unfavorable Information in Official Personnel Files

### 3-1. General
a. Personnel management decisions will be based on the following:

(1) Review of official personnel files.

(2) The knowledge and best judgment of the commander, board, or other responsible authority. (Both favorable and unfavorable information regarding the soldier concerned will be considered.)

b. Personnel decisions that may result in selecting soldiers for positions of public trust and responsibility, or vesting such persons with authority over others, should be based on a thorough review of their records. This review will include an appraisal of both favorable and unfavorable information available.

### 3-2. Policies
a. Except as indicated in paragraph 3-3, unfavorable information will not be filed in an official personnel file unless the recipient has been given the chance to review the documentation that serves as the basis for the proposed filing and make a written statement, or to decline, in writing, to make such a statement. This statement may include evidence that rebuts, explains, or mitigates the unfavorable information. (See para 3-6.) The issuing authority should fully affirm and document unfavorable information to be considered for inclusion in official personnel files.

*Note.*

*Note.* The privileged and confidential nature of information in inspector general IG records requires special attention. Provisions for requesting access and use of IG reports are addressed in AR 20-1.)

b. Unfavorable information filed in official personnel files must meet Privacy Act standards of accuracy, relevance, timeliness, and completeness. (See AR 340-21.) Access to official personnel files will be granted to the person concerned under AR 340-21.

c. Unfavorable information that should be filed in official personnel files includes indications of substandard leadership ability, promotion potential, morals, and integrity. These must be identified early and shown in those permanent official personnel records that are available to personnel managers and selection board members for use in making such personnel decisions as described in paragraph 3-1b. Other unfavorable character traits of a permanent nature should be similarly recorded.

d. Unfavorable information that has been directed for filing in the restricted portion of the OMPF may be considered in making determinations under this regulation.

e. Refusal to consent to a polygraph examination will not be recorded in official personnel files.

### 3-3. Filing of information exempt from the referral procedure
The following information may be filed in the performance portion of the OMPF without further referral to the recipient:

a. Records of courts-martial, court-martial orders, and records of nonjudicial punishment under the Uniform Code of Military Justice (UCMJ), Article 15. (See AR 27-10 and AR 640-10.)

b. Proceedings of boards of officers, if it is clear that the recipient has been given a chance to present evidence and cross-examine witnesses in his or her own behalf.

c. Completed investigative reports. These include criminal investigation reports (or authenticated extracts) that have resulted in elimination or disciplinary action against the person concerned. When it is not practical to include the entire report (or an extract), the investigative report will be referenced.

d. Records of civilian convictions (to include the record of arrest), or extracts thereof, authenticated by civilian authorities. However, records consisting solely of minor traffic convictions are not to be filed in the OMPF.

e. Officer and enlisted evaluation reports. Administrative processing and the appeal of evaluation instruments are governed by AR 623-1, AR 623-105, and AR 623-205. Filing of evaluation instruments is governed by AR 640-10.

f. Other unfavorable information of which the recipient had prior official knowledge (as prescribed by para 3-6) and an adequate chance to refute. The notation "AR 600-37 complied with" will be entered below the filing authority on such unfavorable information.

g. Internal staff actions and working papers within and among personnel management offices and personnel decision makers at HQDA. (Applies to the Career management individual file (CMIF) only according to AR 640-10.)

## 3–4. Filing of nonpunitive administrative letters of reprimand, admonition, or censure in official personnel files

*a. Filing in the military personnel records jacket (MPRJ).* Authority to issue and direct the filing of letters of reprimand, admonition, and censure in the MPRJ (after referral to the person concerned according to para 3–6) is outlined in (1) and (2) below. If filing is intended for the MPRJ, the letter need not be referred to a higher authority for review.

(1) Authority to issue and direct the filing of such letters in the MPRJs of enlisted personnel is restricted to the recipient's immediate commander (or a higher commander in his or her chain of command), school commandants, any general officer (to include those frocked to the rank of brigadier general) or an officer exercising general court-martial jurisdiction over the recipient. Immediate supervisors of enlisted personnel also have authority to issue letters of reprimand; but only if serving in one of the capacities listed above may they also direct filing in the MPRJ.

(2) Authority to issue and direct the filing of such letters in the MPRJ of commissioned officers and warrant officers is restricted to—

*(a)* The recipient's immediate commander or a higher level commander in the chain of command (if such commander is senior in grade or date of rank to the recipient).

*(b)* The designated rater, intermediate rater, or senior rater under the officer evaluation reporting system (AR 623–105).

*(c)* Any general officer (to include one frocked to the rank of brigadier general) who is senior to the recipient or an officer who exercises general court-martial jurisdiction over the recipient.

(3) A letter designated for filing in the MPRJ only may be filed for a period not to exceed 3 years or until reassignment of the recipient to another general court-martial jurisdiction, whichever is sooner. Such a letter will state the length of time it is to remain in the MPRJ.

(4) Statements furnished by the recipient following referral under paragraph 3–6 will be attached to the letter for filing in the MPRJ.

*b. Filing in OMPF.* A letter, regardless of the issuing authority, may be filed in the OMPF kept by MILPERCEN, ARPERCEN, or the proper State Adjutant General (for Army National Guard personnel) only upon the order of a general officer (to include one frocked to the rank of brigadier general) senior to the recipient or by direction of an officer having general court-martial jurisdiction over the individual. Letters filed in the OMPF will be filed on the performance portion (P-fiche). The direction for filing in the OMPF will be contained in an endorsement or addendum to the letter. A letter to be included in a soldier's OMPF will—

(1) Be referred to the recipient concerned for comment according to paragraph 3–6. The referral will include reference to the intended filing of the letter.

*(a)* This referral will also include and list applicable portions of investigations, reports, and other documents that serve, in part or in whole, as the basis for the letter, providing the recipient was not previously provided an opportunity to respond to information reflected in that documentation. Additionally, documents, the release of which requires approval of officials or agencies other than the official issuing the letter, will not be released to the recipient until such approval is obtained.

*(b)* Statements and other evidence furnished by the recipient will be reviewed and considered by the officer authorized to direct filing in the OMPF. This will be done before a final determination is made to file the letter. Should filing in the OMPF be directed, the statements and evidence, or facsimiles thereof, may be attached as enclosures to the basic letter.

*(c)* If it is desired to file allied documents with the letter, these documents must also be referred to the recipient for comment. This includes statements, previous reprimands, admonitions, or censure. Allied documents must also be specifically referenced in the letter or referral document. Care must be exercised to ensure additional unfavorable information is not included in the transmittal documentation unless it has been properly referred for comment.

(2) Contain a statement that indicates it has been imposed as an administrative measure and not as a punishment under UCMJ, Article 15.

(3) Be signed by (or sent under the cover or signature of) an officer authorized to direct such filing.

(4) Be forwarded for inclusion in the performance portion of the OMPF only after considering the circumstances and alternative nonpunitive measures. Minor behavior infractions or honest mistakes chargeable to sincere but misguided efforts will not normally be recorded in a soldier's OMPF. Once placed in the OMPF, however, such correspondence will be permanently filed unless removed through the appeal process. (See chap 7.)

(5) Also be filed in the MPRJ. Such copy will remain in the MPRJ so long as the letter remains filed in the performance fiche of the OMPF.

*c. Decisions against filing letters in the OMPF.* If the general officer (or general court-martial authority) elects not to place the letter in the OMPF, the correspondence will be returned to the person writing the letter. That soldier will advise the recipient of the letter of the decision not to file the letter in the OMPF. The letter may, however, still be

4                                    AR 600–37 • 19 December 1986

directed for filing (by proper authority) in the recipient's MPRJ. (See *a*above.) The specific period of time for which the letter will remain in the MPRJ will be specified.

*d. Circumstances affecting the imposition or processing of administrative letters of reprimand.*

(1) When a soldier leaves the chain of command or supervision after a commander or supervisor has announced the intent to impose a reprimand, but before the reprimand has been imposed, the action may be processed to completion by the losing command.

(2) When the reprimanding official leaves the chain of command or supervision after stating in writing the intent to impose a reprimand, his or her successor may complete appropriate action on the reprimand. In such cases, the successor should be familiar with relevant information about the proposed reprimand.

(3) When a former commander or supervisor discovers misconduct warranting a reprimand, an admonition, or censure, he or she may—

*(a)* Send pertinent information to the individual's current commander for action.

*(b)* Personally initiate and process a letter of reprimand, admonition, or censure as if the former command or supervisory relationship continued. In such cases, further review (if needed) will be accomplished in the recipient's current chain of command. Officials should consider the timeliness and relevance of the adverse information before taking administrative action at the later date.

*e. Reprimands and admonitions imposed as nonjudicial punishment (UCMJ, Article 15)* These are governed by AR 27-10, chapter 3.

*f. Change from enlisted to officer status.*

(1) If a status change from enlisted to commissioned or warrant officer was approved *on or after 16* December 1980—

*(a)* Letters of reprimand, admonition, or censure received while in an enlisted status which are filed in the performance portion of the OMPF will be moved to the restricted portion of the OMPF.

*(b)* Letters filed in the MPRJ will be removed.

(2) If a status change from enlisted to commissioned or warrant officer was approved *on or before 15* December 1980 *and the individual so requests*—

*(a)* Letters of reprimand, admonition, or censure received while in an enlisted status which are filed in the performance portion of the OMPF will be moved to the restricted portion of the OMPF.

*(b)* Letters filed in the MPRJ will be removed.

(3) Requests under (2) above will not be a basis for reconsideration by a special selection board.

### 3–5. Anonymous communications

Anonymous communications will not be filed in a soldier's MPRJ, OMPF, or CMIF unless, after investigation or inquiry, they are found to be true, relevant, and fully proven or supported. If not exempted under paragraph 3–3, the information must be referred to the soldier according to paragraph 3–6 before such information is filed in the MPRJ, OMPF, or CMIF.

### 3–6. Referral of information

*a.* Except as provided in paragraph 3–3, unfavorable information will be referred to the recipient for information and acknowledgment of his or her rebuttal opportunity. Acknowledgement and rebuttal comments or documents will be submitted generally in the following form:

(1) "I have read and understand the unfavorable information presented against me and submit the following statement or documents in my behalf:"

(2) "I have read and understand the unfavorable information presented against me and elect not to make a statement."

*b.* If a recipient refuses to acknowledge the referral of unfavorable information, the reprimanding official will prepare the following statement: "On (date), (name) has been presented with the unfavorable information and refuses to acknowledge by signature." The letter can then be directed for filing per paragraph 3–4.

## Chapter 4
## Unfavorable Information in Intelligence and Personnel Security Files

### 4–1. Unresolved unfavorable information

This chapter sets forth provisions for disposition of unresolved unfavorable information in intelligence and personnel security files.

### 4-2. Security information

Derogatory information concerning loyalty and subversion (AR 604-10 chapter 2) will be processed as set forth in that regulation.

### 4-3. Security clearance

Commanders will ensure that security clearances are not suspended in lieu of punishment under the UCMJ or other disciplinary measures. Denial or revocation of a security clearance will not be used as a punishment or disciplinary measure. Action to deny or revoke a security clearance will be taken only by the (CCF). (See AR 604-5.)

### 4-4. Resolution of unfavorable information in intelligence and personnel security files

*a. Commander's responsibility.* When a commander learns of unfavorable information from intelligence, personnel security files, and security investigations, or any other credible source, he or she will take one or more of the following actions;

(1) Suspend access to classified information, initiate investigation under AR 15-6, AR 604-5, AR 604-10, or AR 381-20, and forward the results to Commander, U.S. Army Central Personnel Security Clearance Facility (ATTN: PCCF-M), Fort Meade, Maryland 20755-5250, in accordance with AR 604-5.

(2) Notify the CCF to initiate security clearance revocation procedures, if appropriate, by sending a Letter of Intent. If the security clearance was not previously suspended, it will be suspended upon receipt of the Letter of Intent or upon receipt of notification from CCF to suspend access.

(3) Refer any case involving a soldier in a position of leadership, trust, or responsibility, as defined below, whose security clearance has been denied or revoked, to the DASEB. The board will decide what unfavorable information, if any, will be made a part of the recipient's official personnel files. For purposes of this paragraph, the following personnel are deemed to be in positions of leadership, trust, or responsibility: All noncommissioned officers, E-6 and above, and all warrant and commissioned officers.

(4) Consider appropriate action under AR 135-175, AR 135-178, AR 604-10, AR 635-100, AR 635-120, AR 635-200, or the UCMJ.

(5) Reassign the person to a nonsensitive position.

*b. Procedures for resolution.* In connection with *a*(1), (2), (3), and (4) above, the following procedures apply:

(1) Forward unfavorable information involving elements of espionage, sabotage, treason, sedition, or criminal subversion, to Commander, U.S. Army Central Personnel Security Clearance Facility (ATTN: PCCF-M), Fort Meade, Maryland 20755-5250, for action under AR 604-5 or 604-10.

(2) If the unfavorable information involves suitability issues (e.g., financial difficulties or morals), prepare a request for Special Investigative Inquiry per 604-5 and submit it to the Defense Investigative Service to resolve the issue.

(3) Commanders may use added investigative resources available to the commander, such as military police, inspector general, Criminal Investigation Command, and investigating officers or a board of officers who may investigate matters within their assigned area of responsibility.

*c. Suspension of favorable personnel action.* Suspension of favorable personnel action (under AR 600-31) will be considered in connection with *a*(1), (2), and (3) above.

### 4-5. Access to intelligence and personnel security files

AR 340-21 and AR 381-45 set forth procedures for gaining access to intelligence and personnel security files.

### 4-6. Use of intelligence and personnel security files in personnel actions.

*a.* Intelligence and personnel security files are not a part of the military personnel records system as prescribed by AR 640-10. However, to ensure that the Army's interests are protected when selecting a soldier for a position of leadership, trust, and responsibility—

(1) Correlate significant verified information with information in personnel files.

(2) Make all information available to personnel decision makers.

*b.* Current intelligence and personnel security files may have unevaluated and dormant information of a nature that the person concerned might not have had a chance to comment upon. These files also have sensitive information. If disclosed prematurely, the information could jeopardize current investigations or sources of information. For these reasons, intelligence and personnel security files are not furnished to promotion selection boards or other personnel decision makers except as follows:

(1) The DASEB, as outlined in chapters 2 and 6. This board does not make personnel decisions; it merely determines what information will be considered for possible filing in official personnel files.

(2) Personnel managers in highly intensified personnel management areas as designated by the Secretary of the Army, the Chief of Staff of the Army, or the Deputy Chief of Staff for Personnel.

(3) As the Secretary of the Army may direct.

## Chapter 5
## Unfavorable Information in Army Law Enforcement Files

### 5–1. Authorities for filing and using unfavorable information

Statutory or regulatory authorities govern the filing and use of unfavorable material in military police or U.S. Army Criminal Investigation Command (USACIDC) crime records. (See 5 U.S.C. 552a, AR 340–21 AR 195–5, AR 190–45, and AR 195–6; also see para's 2–2 and 2–4 of this regulation.) This chapter prescribes procedures for the disposition and referral of, and access to, information in Army law enforcement files.

### 5–2. Disposition of information in law enforcement files

a. *Criminal justice action.* Copies of criminal investigative case files, military police reports, or information from these files or reports are provided commanders by law enforcement agencies for criminal justice disposition and ancillary actions.

(1) *Criminal justice disposition.* As a result of command consideration, criminal justice disposition proceeds to one of the categories listed below. To this end, the proper authority may—

*(a)* Start court-martial action.

*(b)* Start action under the UCMJ, Article 15.

*(c)* Decline to consider further criminal justice proceedings.

(2) *Ancillary action.* The actions described below are not considered to replace criminal justice disposition, but are, properly stated, independent of criminal justice disposition.

*(a)* Action to suspend favorable personnel actions reported according to AR 600–31.

*(b)* Elimination action under AR 135–175, AR 635–100, or AR 635–200.

*(c)* Action to suspend or deny access to classified information under AR 604–5 and, if needed, investigation under AR 381–20 to obtain more facts in the case.

*(d)* Other administrative action, as appropriate.

b. *Noncriminal justice action.* Independent of completing a criminal justice disposition (as listed in *a*(1) above), Army review of criminal investigative or military police cases about subject personnel, for suitability consideration, may result in action under one or more of the categories listed below.

(1) Elimination action under AR 135–175, AR 635–100, or AR 635–200.

(2) Action to suspend or deny access to classified information under AR 604–5 and, if needed, investigation under AR 381–20 to develop the facts of the case.

(3) Favorable closing of the case.

### 5–3. Access to law enforcement investigative files

a. AR 190–45, AR 195–2, AR 195–6, AR 340–17, and AR 340–21 set forth procedures for gaining access to law enforcement investigative files.

b. Law enforcement records and reports are not a part of the military personnel records system as prescribed by AR 640–10.

(1) To ensure that commanders and supervisors take proper action as described in paragraph 5–2, information from criminal investigative and military police files is exchanged between USACIDC or military police elements and the commanders whom they support.

(2) AR 190–45, AR 195–2, AR 195–6, and AR 340–21 set forth procedures to preclude the release of unfavorable information for purposes other than those described in paragraph 5–2.

(3) These safeguards do not preclude proper dissemination of information in law enforcement files outside of law enforcement or command channels when that information indicates that—

*(a)* An offense is imminent; or

*(b)* Dissemination of the information is necessary to protect national security or the security of U.S. Army personnel, activities, or installations; or

*(c)* Such dissemination is required by law or regulation.

c. Release of information about an ongoing Army law enforcement investigation requires careful consideration of the following:

(1) The particular need for the information requested.

(2) The need to avoid dissemination of unproved allegations.

(3) The requirement to protect a suspect's legal rights.

(4) The maintenance of the integrity and effectiveness of the investigation. (See AR 190–45 and AR 195–2.)

(1) The unfavorable information should be made a part of the performance portion of the OMPF for consideration in personnel decisions. The DASEB may also recommend initiation of separation or elimination action based on the unfavorable information. The DMPM, on behalf of the DCSPER, is the decision authority for filing unfavorable information in the OMPF. The DMPM may also recommend that separation or elimination be considered, but such action may be initiated only by the proper official.

(2) The unfavorable information should be edited, based on the explanation or rebuttal, and the remaining information should be made a part of the performance portion of the OMPF for consideration in personnel decisions. The DASEB may also recommend initiation of separation or elimination action, based on the remaining information. Such recommendations are subject to the same approval authority as specified in (1) above.

(3) The unfavorable information should not be included in the performance portion of the OMPF. Unless otherwise withheld by the DMPM, the DASEB has decision authority to close such cases favorably and to notify the referring agency of the outcome.

b. For cases involving ARNG or USAR personnel not on active duty, adverse filing recommendations made by the DASEB will be routed through the Director, Army National Guard, or the Chief, Army Reserve, as appropriate, to the DMPM for final decision.

## Chapter 7
## Appeals and Petitions

### 7–1. Removal of unfavorable information from official personnel files
Appeals and petitions for removal of unfavorable information are to be directed to the DASEB. This chapter sets forth the policies and procedures whereby a person may seek removal of unfavorable information from official personnel files.

### 7–2. Policies and standards
a. *Appeals for removal of OMPF entries.* Once an official document has been properly filed in the OMPF, it is presumed to be administratively correct and to have been filed pursuant to an objective decision by competent authority. Thereafter, the burden of proof rests with the individual concerned to provide evidence of a clear and convincing nature that the document is untrue or unjust, in whole or in part, thereby warranting its alteration or removal from the OMPF. Normally, consideration of appeals is restricted to grades E6 and above, to officers, and to warrant officers. Although any soldier may appeal the inclusion of a document placed in his or her file under this regulation, the appeals of soldiers in grades below E–6 will only be considered as an exception to policy. This does not include documents that have their own regulatory appeal authority such as evaluation reports and court-martial orders. Appeals that merely allege an injustice or error without supporting evidence are not acceptable and will not be considered.

b. *Appeals for transfers of OMPF entries.*

(1) Only letters of reprimand, admonition, or censure may be the subject of an appeal for transfer to the restricted fiche. Normally, such appeals will be considered only from soldiers in grades E–6 and above, officers, and warrant officers. (At lower grades, the OMPF is not used for centralized selection purposes.) In addition to the cases cited in *a* above, such documents may be appealed on the basis of proof that their intended purpose has been served and that their transfer would be in the best interest of the Army. The burden of proof rests with the recipient to provide substantial evidence that these conditions have been met.

(2) Appeals approved under this provision will result in transfer of the document from the performance record to the restricted portion of the OMPF. However, the transfer of administrative letters of reprimand, admonition, or censure to the restricted portion of the OMPF will not normally serve as the sole basis for promotion reconsideration by a special board, unless approved by the DMPM as a justified exception to policy.

(3) Appeals submitted under this provision will normally be returned without action unless at least 1 year has elapsed since imposition of the letter and at least one evaluation report, other than academic, has been received in the interim.

(4) If an appeal is denied under this provision (including those not accepted, as provided in *a* above) a copy of the letter of notification regarding this outcome will be placed in the commendatory and disciplinary portion of the performance record. The appeal will be placed in the restricted portion of the OMPF.

c. *Petition for transfer of Articles 15.* (See AR 27–10, para 3–43.)

(1) This provision is limited to records of nonjudicial punishment imposed under the provisions of Article 15, UCMJ, and applies only to members in grades E–6 and above, officers, and warrant officers. Records of nonjudicial punishment may be transferred upon proof that their intended purpose has been served or that their transfer would be in the best interest of the Army. The burden of proof rests with the soldier concerned to provide substantial evidence that these conditions have been met. Claims that an Article 15 is untrue or unjust, in whole or in part, will not be considered under this paragraph. The authority to adjudicate such claims rests with the Army Board for Correction of

Military Records (ABCMR), under AR 15–185, after the recipient has exhausted other means for administrative remedy as contained in AR 27–10 (less para 3–43).

(2) The provisions *b*(2), (3), and (4) above apply equally to Article 15 petitions.

*d. Appeal and petition authority.* The DASEB has been established as the appeal and petition authority for unfavorable information entered in the OMPF under this regulation (see para 7–4 reference MPRJ appeals). In the resolution of appeals and petitions—

(1) The process is administrative and non-adversarial in nature AR 15–6 does not apply.

(2) Appellants and petitioners, or those on their behalf, are not authorized to appear in person before the DASEB.

(3) The DASEB may request and consider any files, records, and reports believed to have relevance to a case under consideration. (See the glossary for crime records; official personnel files; and intelligence and personnel security, law enforcement, and other investigative files.) If the DASEB uses unfavorable information derived from investigative files or criminal records as the basis, in part or in whole, for denial of an appeal or petition, the soldier concerned will be

*(a)* Notified of such use.

*(b)* Provided a copy of the source document.

*(c)* Permitted to re-appeal or petition if that unfavorable information can be satisfactorily explained or rebutted.

(4) The DASEB may obtain corroboration from the appellant/petitioner, soldiers in the chain of command, or anyone thought to have firsthand knowledge relevant to a case. An appellant/petitioner will generally be contacted, as necessary, by official correspondence.

*e. Appeals/petitions.* These must—

(1) Be submitted by the appellant, in writing. (See exception at *f* below.)

(2) Be accompanied by relevant, substantive evidence.

*f.* An officer who directed the filing in the OMPF of an administrative letter of reprimand, admonition, or censure may request its revision, alteration, or removal, if later investigation determines it was untrue or unjust, in whole or in part. The basis for such determination must be provided the DASEB in sufficient detail so as to justify the request. An officer who directed the filing of such a letter in the OMPF may not initiate an appeal on the basis that the letter has served its intended purpose. However, a letter of support may be submitted with the recipient's appeal.

## 7–3. Processing appeals and petitions—OMPF

*a. Active Army personnel.*

(1) Appeals and petitions (in military letter format) should be prepared and sent directly to the President, DA Suitability Evaluation Board (HQDA (DAPE–MPC–E) WASH, DC 20310–0300).

(2) The DASEB will review and evaluate the evidence available and make final determinations within that authority not otherwise withheld by the DMPM, ODCSPER. The DASEB will make recommendations to the DMPM on cases withheld to his or her authority.

*b. Reserve Component personnel.*

(1) Appeals submitted by USAR officer and enlisted personnel not on active duty are normally processed through the Commander, Army Reserve Personnel Center (ARPERCEN). The Commander, ARPERCEN will refer the appeal through the Office of the Chief, Army Reserve (DAAR–PE), to the DCSPER (DAPE–MPC–E) with a recommendation. The DASEB will then review and evaluate the appeal.

(2) Appeals submitted by Army National Guard officers and enlisted personnel not on active duty will be processed through the proper State adjutant general and the Chief, National Guard Bureau to the DCSPER (DAPE–MPC–E) for action.

## 7–4. Processing appeals—MPRJ

Appeals to remove letters of reprimand, admonition, or censure from the MPRJ will not be sent to the DASEB. Authority to remove such a letter from the MPRJ before the end of the period specified in the letter is vested in the following:

*a.* The officer having general court-martial jurisdiction over the recipient (Active Army personnel); the Commander, ARPERCEN (USAR personnel not on active duty and retired Army personnel whose official personnel files are kept by ARPERCEN); and the State Adjutant General (ARNG personnel not on active duty).

*b.* The individual who first directed that the letter be filed in the MPRJ or a higher level commander in the chain of command in which the letter was issued.

## 7–5. Amendment rights

This regulation does not limit or restrict a soldier's right to request amendment of his or her records under the Privacy Act and AR 340–21. Neither does it limit nor restrict the authority of the DASEB to act as an Access and Amendment Refusal Authority under AR 340–21.

## 7–6. Correction of military records

AR 15–185 contains policy and procedures for applying to the ABCMR and for correcting military records by the Secretary of the Army. Applications should be sent to the ABCMR to correct an error or remove an injustice only after all means of administrative appeal have been exhausted. This includes appeal action under this chapter.

# Appendix A
## Related Publicatios

### Section I
### Required Publications
A related publication is merely a source of additional information. The user does not have to read it to understand the regulation.

**AR 15–6**
Procedures for Investigating Officers and Boards of Officers

**AR 15–185**
Army Board for Correction of Military Records

**AR 20–1**
Inspector General Activities and Procedures

**AR 27–10**
Military Justice

**AR 40–66**
Medical Record and Quality Assurance Administration

**AR 40–400**
Patient Administration

**AR 135–175**
Separation of Officers

**AR 135–178**
Separation of Enlisted Personnel

**AR 190–45**
Records and Forms

**AR 195–2**
Criminal Investigation Activities

**AR 195–5**
Evidence Procedures

**AR 195–6**
Department of the Army Polygraph Activities

**AR 340–17**
Release of Information and Records from Army Files

**AR 340–21**
The Army Privacy Program

**AR 381–20**
U.S. Army Counterintelligence (CI) Activities

**AR 381–45**
Investigative Records Repository (IRR)

**AR 600–31**
Suspension of Favorable Personnel Actions for Military Personnel in National Security Cases and Other Investigations or Proceedings

**AR 604–5**
DA Personnel Security Program

**AR 604–10**
Military Personnel Security Program

**AR 623–105**
Officer Evaluation Reporting System

**AR 623–205**
Enlisted Evaluation Reporting System

**AR 623–100**
Officer Personnel

**AR 635–120**
Officer Resignations and Discharges

**AR 635–200**
Enlisted Personnel

**Section**
**Referenced Forms**

**AR 640–10**
Individual Military Personnel Records

## Glossary

**Section I**
**Abbreviations**

**ABCMR**
Army Board for Correction of Military Records

**ACSI**
Assistant Chief of Staff for Intelligence

**ARNG**
Army National Guard

**ARPERCEN**
U.S. Army Reserve Personnel Center

**CCF**
U.S. Army Central Personnel Security Clearance Facility

**CID**
Criminal Investigation Division

**CMIF**
career management individual file

**DA**
Department of the Army

**DASEB**
DA Suitability Evaluation Board

**DCSPER**
Deputy Chief of Staff for Personnel

**DMPM**
Director of Military Personnel Management

**HQDA**
Headquarters, Department of the Army

**IG**
Inspector General

**MILPERCEN**
U.S. Army Military Personnel Center

**MP**
military police

**MPRJ**
military personnel records jacket

**NGB**
National Guard Bureau

**ODCSPER**
Office of the Deputy Chief of Staff for Personnel

**OMPF**
official military personnel file

14                                          AR 600–37 • 19 December 1986

**UCMJ**
Uniform Code of Military Justice

**USACIDC**
U.S. Army Criminal Investigation Command

**USAIRR**
U.S. Army Investigative Records Repository

**USAISC**
U.S. Army Intelligence and Security Command

**USAR**
U.S. Army Reserve

## Section II
## Terms

**Ancillary action**
Action attendant to or subsequent to criminal justice action.

**Crime records**
CID reports of investigation, military police (MP) reports, and other reports maintained by (or belonging to) USACIDC. (Example: CID and MP reports kept at the USACIDC Crime Records Center.)

**Favorable personnel action**
   *a.* Any personnel or career management decision that enhances a soldier's status or position. Included are—
   ((1) Promotions.
   ((2) Regular Army appointments.
   ((3) Selection for schooling.
   ((4) Entry or continuation on active duty.
   ((5) Awards, decorations, and commendations.
   ((6) Reassignment.
   ((7) Retirement.
   ((8) Separation or release from active duty.
   ((9) Reenlistment.
   *b.* Although the granting of a security clearance is a"favorable personnel action," it is not governed by this regulation. (See AR 604–5.)

**Intelligence and personnel security, law enforcement, and other investigative files**
Reports, dossiers, and case materials (in documents or data banks) that belong to intelligence, law enforcement, or other investigative agencies. (Examples: files of the USAIRR, the USACIDC Crime Records Center, those pertaining to investigations conducted by general courts-martial authorities, and IG files at all echelons.)

**Major commands**
In addition to the designated major Army commands, separate DA agencies and activities, CONUS armies, the U.S. Army Recruiting Command, the U.S. Military Entrance Processing Command, and Army General and Special Staff agencies are considered major commands for the purpose of processing cases under this regulation.

**Official personnel files**
These include the official military personnel file (OMPF), career management individual file (CMIF), and the military personnel records jacket (MPRJ). Also included are reports, forms, and records (in documents or data banks) maintained by the Army under AR 640–10 and AR 640–2–1 for consideration when making personnel management decisions affecting the person concerned. The term "official personnel files" does not include crime records (see"crime records" above).

**Recipient**
A soldier who has had unfavorable information referred to him or her for refutal, explanation, or comment; who has

received a letter of reprimand, admonition, or censure in accordance with this regulation; or who has otherwise been the subject of an adverse action, the resolution of which may implicate the provisions of this regulation.

**Unfavorable information**
Any credible derogatory information that may reflect on a soldier's character, integrity, trustworthiness, or reliability.

## Section III
## Special Abbreviations and Terms
There are no special terms.

**UNCLASSIFIED**

PIN 004324–000



ELECTRONIC PUBLISHING SYSTEM

OneCol FORMATTER WIN32 Version 227

PIN:            004324–000
DATE:           11- 9-05
TIME:           14:54:20
PAGES SET:      20

_____

DATA FILE:      C:\wincomp\r600-37.fil
DOCUMENT:       AR 600–37

SECURITY:       UNCLASSIFIED
DOC STATUS:     FORMAL