**United States District Court**
**Eastern District of Kentucky**
**(Frankfort Division)**

Eastern District of Kentucky
**F I L E D**

AUG 3 1 2012

AT COVINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

| | |
|---|---|
| 1LT Michael Dean Vaughan ) <br> 2010 Scott BLVD. ) <br><br> Covington, KY 41014 ) <br><br> *Plaintiff,* ) <br><br> vs. ) <br> ) <br> KY Army National Guard ) <br> 100 Minuteman PKWY ) <br><br> Frankfort, KY 40601 ) <br> ) <br> AND ) <br> ) <br> United States Department of the Army ) <br> 1400 Defense Pentagon ) <br> ) <br> Washington DC 20301-1400 ) <br> ) <br> *Defendant(s)* ) | Case No.: 3:12-cv-00035-DCR <br><br> Judge: Danny Reeves |

*"He that takes the procedural sword shall perish with that sword."*
-Justice Frankfurter; Vitarelli v. Seton, 359 U.S. 535 (1959)

## BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPPOSITION TO DEFENDANT'S MOTION TO DISMISS

### PRELIMINARY MATTER

As a preliminary matter, the plaintiff would like to address an issue that involves

the Assistant U.S. Attorney David Middleton ("AUSA") and the defendants in the

government's motion to dismiss. The Plaintiff has noted[1] that the defendants in collusion with the U.S. Attorney's Office, have engaged in the intentional spoliation of relevant evidence in order to effect the justiciability of this action, and of the intentional 'misstatements' of the AUSA regarding relevant evidence of record. Additionally, the plaintiff notes the defendants and the AUSA's response [2] to the plaintiffs 'Initial Notice of Fraud on the Court', whereas the AUSA stated that it was *never the intention of counsel to convey false or misleading information to the court."* Then the AUSA gave the reasoning behind the willful, intentional, and bad faith spoliation of evidence in order to affect the justiciability of this action. This and other more poignant examples of the defendant's bad faith conduct will be addressed later in this document and in the plaintiff's statement of undisputed facts.

## I.   SUBJECT MATTER JURISDICTION & JUSTICIABILITY

The plaintiff asserts that not every claim arising from a military decision presents a nonjusticiable controversy as asserted by the AUSA. Courts have consistently recognized that, although the merits of a decision committed wholly to the discretion of the military are not subject to judicial review, a challenge to the particular procedure followed in rendering a military decision does present a justiciable controversy.

---

[1] 'Initial Notice of Fraud on the Court'; Doc. No. 18, filed on August 8th, 2012 in KY E.D. 3:12-CV-35.

[2] 'Amended Document' (Amendment to Memorandum in Support of Motion to Dismiss); Doc. No. 19, filed on August 13th, 2012 in KY E.D. 3:12-CV-35.

Specifically, a court may appropriately decide whether the military followed procedures, as because by their very nature, the procedures explicitly limit the military's discretion in making a decision. It is the plaintiff's position, that this court may review the challenged process[s] as challenged by the plaintiff in his complaint for compliance with established procedures.

Moreover, other Circuit Courts of Appeals have recognized a similar distinction. See, e.g., Watson v. Arkansas Nat'l Guard, 886 F.2d 1004, 1011 n. 16 (8th Cir.1989) ("[A]djudication of [plaintiff's] claims requires the district court to determine only whether the Secretary's decision making process was deficient, not whether his decision was correct."); Kreis v. Secretary of Air Force, 866 F.2d 1508, 1511 (D.C.Cir.1989) (same).

In cases in which procedural violations are alleged, the test or standards against which this court should measure the military's conduct are inherent; they are the applicable statutes and regulations in which the military has limited its discretion. In such instances, this court does not improperly exercise any discretion reserved for the military. This court is to merely determine whether the procedures were followed by applying the facts to the statutory or regulatory standard and to act as appropriate.

With regards to Subject Matter Jurisdiction, the plaintiff concedes that a court is always obligated to consider its own jurisdiction in a case. However, the APA provides for judicial review of *"final agency action for which there is no other adequate remedy in a*

*court.*" 5 U. S. C. §704.  Moreover, the APA creates a *"presumption favoring judicial review of administrative action.*" Block v. Community Nutrition Institute, 467 U. S. 340, 349.

Furthermore, the plaintiff in this action has alleged that the actions of the defendants were willful, intentional, arbitrary and capricious as they deprived the plaintiff of his liberty interest in his good name and professional reputation without due process of law, in violation of the plaintiff's Fifth and Fourteenth Amendment rights. As the AR 15-6 Report of Investigation is willfully and intentionally not subject to review by the defendants, it thus marks the consummation of the agency's decision making process as it resulted in multiple final adverse administrative action(s) being taken against the plaintiff from which *"determined"* the plaintiff's *"rights or obligations. "* Bennett v. Spear, 520 U. S. 154, 178 (1997) that which "legal consequences . . . [did] flow'". Therefore, this court explicitly has both subject matter jurisdiction, and this case is explicitly justiciable notwithstanding the multiple instances of intentional spoliation of evidence by the defendants in this and other action(s).

## THE ARMY BOARD FOR THE CORRECTION OF MILITARY RECORDS

As to the justiciability or appropriateness of this action in relation to the plaintiff's pending Army Board for the correction of Military Records action that the AUSA correctly states is pending, administrative exhaustion is not required in the present case. The Supreme Court decided Darby v. Cisneros, 509 U.S. 137 (1993). In Darby, the Court explicitly held that federal courts have no authority to require plaintiffs to exhaust

administrative remedies prior to seeking judicial review under the APA unless a statute or agency regulation specifically mandates exhaustion as a prerequisite to judicial review. Darby, 509 U.S. at 144-146. Unlike other past decisions, the Court in Darby did not distinguish nor exempt the military, or its separate justice system, from its holding.

Furthermore, Federal Courts of Appeals have also declined to read a military exception into the Supreme Court's ruling in Darby. In Dowds v. Clinton, 18 F.3d 953 (Table), 1994 WL 85040 (D.C. Cir. 1994), 305 U.S. App. D.C. 193, the Circuit Court of Appeals for the District of Columbia held that pursuant to the Court's decision in Darby, the plaintiff was not required to resort to the Military Board of Correction prior to filing suit in federal court. Approximately one year later, in Ostrow v. Secretary of the Air Force, 48 F.3d 562 (Table), 1995 WL 66752 (D.C. Cir. 1995), the court reaffirmed its decision in Dowds, declining the Secretary's invitation to construe a military exception to the rule on exhaustion set forth in Darby. See also Robertson v. United States, 145 F.3d 1346 (Table), 1998 WL 223159 *4 n. 2 (10th Cir. 1998) (noting that "other courts no longer require exhaustion in military cases due to the holding in Darby").

More recently in the 6th Circuit in BANGURA v. HANSEN, 434 F.3d 487 (6th Cir. 2006); *"Plaintiffs' failure to exhaust their administrative remedies does not deprive this court of subject matter jurisdiction over Plaintiffs' APA claims. The law governing the exhaustion of APA claims differs from that governing exhaustion in other contexts. It is governed by 5 U.S.C. § 704; Darby v. Cisneros, 509 U.S. 137, 146-47, 113 S.Ct. 2539, 125 L.Ed.2d 113 (1993).*

*Section 704 only requires a plaintiff to exhaust his or her administrative remedies where a statute or agency rule makes the remedies mandatory. Id.; see also Dixie Fuel Co., 171 F.3d at 1059. Where an intra-agency appeal is optional, however, the APA does not require a plaintiff to appeal prior to filing suit in federal court. Darby, 509 U.S. at 147, 113 S.Ct. 2539 ("Section [704] explicitly requires exhaustion of all intra-agency appeals mandated either by statute or by agency rule; it would be inconsistent with the plain language of § [704] for courts to require litigants to exhaust optional appeals as well.").* It is clear that exhaustion is not a requirement for the plaintiff in this action.

Furthermore, this court can enjoin the defendants from engaging in further violations of the plaintiff's procedural due process rights which the Army Board for the Correction of Military Records will not pursuant to Army Regulation 15-185 PARA 2-6 which states pertinently as follows;

> *"2–6. Stay of other proceedings*
> *Applying to the ABCMR does not stay other proceedings."*

## II.   INTRODUCTION

This case is ultimately about procedural due process that was supposed to have been accorded to the plaintiff in this action. The question is; 'Was 1LT Michael Vaughan supposed to have been given the opportunity to rebut the AR 15-6 Report of Investigation prior to adverse administrative action?' The defendants have confirmed via their Motion to Dismiss and via e-mails with the U.S. Attorney's Office that the

plaintiff was explicitly denied the right to receive and rebut the AR 15-6 Report of Investigation that was produced on August 18th, 2009[3]. Though the plaintiff requested on multiple occasions to get a copy of this AR 15-6 Report of Investigation in his military capacity for rebuttal purposes, prior to final adverse action being taken against him, he ultimately only received a [incomplete] copy of the AR 15-6 Report of Investigation from a FOIA/Privacy Act request[4]. Though Army Regulations, and constitutional due process required that the plaintiff be accorded the opportunity to rebut the AR 15-6 Report of Investigation ("AR 15-6 ROI") as multiple final adverse actions were taken against him based on the AR 15-6 ROI , the plaintiff was willfully, intentionally, arbitrarily, and capriciously denied his procedural rights in order to protect COL Rodney Hayes from then pending, now current litigation.

Furthermore, this pattern of denying the plaintiff his procedural rights represents willful and intentional affirmative misconduct of the defendants for the past three years that includes the defendants intentionally lying about the plaintiff to this court, intentionally spoliating evidence, and committing frauds on this federal court and even ultimately refusing the plaintiff the opportunity to rebut the AR 15-6 ROI at the Withdrawal of Federal Recognition Board Hearing held on July 9th, 2011 by giving the AR 15-6 Report of Investigation 'Res Judicata' status and making findings of fact

---

[3] See attachments to Doc. No. 35 in Vaughan v. Brigham 3:10-CV-5. Note that this missing the last page in which the appointing officer non-concurred with the finding of conduct unbecoming.

[4] Attached as Exhibit "A" to this memorandum.

despite such an egregious violation of his substantive rights and completely contrary to what LTG Michael Bednarek advised through his Deputy Chief of Staff COL Shane Deverill.

As explained below in the plaintiff's Argument Section and in the plaintiff's statement of undisputed facts, despite the fact that the AR 15-6 Report of Investigation is itself legally & procedurally insufficient and that the defendants intentional denial of the plaintiff's due process requirements will never ultimately be sustained, the defendants continue their relentless attack and affirmative misconduct against the plaintiff for doing nothing more than engaging in his statutory/constitutional right to seek redress in the courts for wrongs committed against him and demanding that the defendants follow the procedures that they are required to follow.

Given the defendants persistent and continuing violations of the plaintiff's procedural, constitutional, and statutory rights, the plaintiff is entitled to injunctive and declaratory relief preventing the defendants from continuing to threaten the plaintiff with a legally insufficient AR 15-6 Report of Investigation that the plaintiff was intentionally denied the right to receive and rebut as required by Army & National Guard Regulations. As these bad faith actions and threats all meet the applicable elements necessary for 'Equitable Estoppel against the Government', this honorable court can enjoin and restrain the defendants from any further actions based on the AR 15-6 Report of Investigation.

Because the threat of a second Board hearing in and of itself does, and any following through on that threat would, violate the plaintiff's fundamental due process rights under Fifth and Fourteenth Amendments to the U.S. Constitution, and the Administrative Procedure Act, this court must act swiftly.

## III.   ARGUMENT

### THE AR 15-6 REPORT OF INVESTIGATION AS IT RELATES TO
### THE RELIEF FOR CAUSE/REFERRED OFFICER EVALUATION REPORT

This court has subject matter jurisdiction and this case is justiciable as multiple final adverse agency actions were taken against the plaintiff based on an AR 15-6 Report of Investigation that the plaintiff was willfully, intentionally, arbitrarily, and capriciously denied the opportunity to rebut as required by Army Regulations[5]. These adverse actions had legal consequences and were the consummation of the defendant's decision making process as the findings and conclusions are demonstrably not subject to further review.

The AUSA's response[6] that the plaintiff was not required to be accorded the right to rebut the AR 15-6 as he was not designated a respondent is legally and factually inaccurate.

---

[5] Army Regulation 15-6, Army Regulation 600-37, Army Regulation 623-105, and Army Regulation 623-3 attached as Exhibit "C".
[6] See Motion to Dismiss, Memorandum in Support; Doc. No. 14-1, Page 8

Specifically, Army Regulation 15-6 PARA 1-9 (c) states in pertinent part;

"*c. Except as provided in d below, **when adverse administrative action is contemplated against an individual** (other than a civilian employee, see b above**), including an individual designated as a respondent,** based upon information obtained as a result of an investigation or board conducted pursuant to this regulation, **the appropriate military authority must observe the following minimum safeguards before taking final action against the individual**:*

> *(1) Notify the person in writing of the proposed adverse action and provide a copy, if not previously provided, of that part of the findings and recommendations of the investigation or board and the supporting evidence on which the proposed adverse action is based.*

> *(2) Give the person a reasonable opportunity to reply in writing and to submit relevant rebuttal material.*

> *(3) Review and evaluate the person's response.*

*d. There is no requirement to refer the investigation to the individual if the adverse action contemplated is prescribed in regulations or other directives that provide procedural safeguards, such as notice to the individual and opportunity to respond. For example, there is no requirement to refer an investigation conducted under this regulation to a soldier prior to giving the soldier an adverse evaluation report based upon the investigation because the regulations governing evaluation reports provide the necessary procedural safeguards.*

*e. **When the investigation or board is conducted pursuant to this regulation but the contemplated administrative action is prescribed by a different regulation or directive with more stringent procedural safeguards than those in c above, the more stringent safeguards must be observed.***"

Army Regulation 15-6 PARA 1-9 (e) [above] shows that whenever different regulations and directives have different procedural safeguards, the *"more stringent procedural safeguards"* must be observed.  Furthermore, Army Regulation 15-6 PARA 1-9 (d) states that "*there is no requirement to refer an investigation conducted under this*

*regulation to a soldier prior to giving the soldier an adverse evaluation report"*. However, the plaintiff did not just receive a simple 'adverse evaluation report', he received a 'Relief for Cause/Referred Officer Evaluation Report' which has its own procedural safeguards. Thus an examination of Army Regulations 623-105 and Army Regulation 623-3 PARA 3–58 (2007 Version) that pertain to evaluation reports must be checked to see what these army regulations require for due process as they relate to the plaintiff; 1) being relieved of command on September 19th, 2009 and ultimately transferred[7] on November 9th, 2009 to the 201st EN BN as an operations officer, and of the plaintiff receiving a relief for cause/referred officer evaluation report based on an informal AR 15-6 Investigation. Specifically, Army Regulation 623-105 PARA 3-50(a) states in pertinent part;

> *a. A report is required when an officer is relieved for cause regardless of the rating period involved. Relief for cause is defined as an early release of an officer from a specific duty or assignment directed by superior authority and based on a decision that the officer has failed in his or her performance of duty. In this regard, duty performance consists of the completion of assigned tasks in a competent manner and compliance at all times with the accepted professional officer standards shown in Part IV, DA Form 67-9. These standards apply to conduct both on and off duty. If, for whatever reasons, the relief does not occur on the date the officer is removed from his or her duty position responsibilities, the period of time between the removal and the relief will be nonrated time included in the period of the relief report. The report will be rendered by the published rating chain at the time of the relief; no other report will be due during this nonrated period. When an officer is suspended from duties pending investigation every effort should be made to retain the established rating chain until the investigation is resolved.*
>
> *b. If relief for cause is contemplated on the basis of an informal AR 15-6*

---

[7] See attached copy of orders transferring the plaintiff attached as Exhibit "B" to this memorandum.

*investigation, the referral procedures contained in that regulation must be complied with before the act of initiating or directing the relief. This is irrespective of the fact that the resultant relief for cause report must also be referred to the rated officer as described in paragraph 3-33.[8] This does not preclude a temporary suspension from assigned duties pending application of the procedural safeguards contained in AR 15-6. Action to relieve an officer from any command position will not be taken until after written approval by the first general officer in the chain of command of the officer being relieved is obtained, as required by AR 600-20.*

Army Regulation 623-105 PARA 3-50 requires that the referral procedures as outlined in AR 15-6 **MUST BE COMPLIED WITH [Emphasis Added]** before the act of initiating or directing relief and this is irrespective of the fact that the resultant relief for cause report MUST also be referred to the rated officer...."*pending application of the procedural safeguards contained in AR 15-6.*" Thus AR 623-105 & AR 623-3 has more stringent procedural safeguards that AR 15-6 require be followed. Additionally, AR 623-3 states the same requirements. Specifically, Army Regulation 623-3 PARA 3–58 (2007 Version) states in pertinent part;

> *b. Cases where the rated officer has been suspended from duties pending an investigation will be resolved by the chain of command as expeditiously as possible to reduce the amount of potential non-rated time involved. Every effort will be made to retain the established rating chain, with the officer performing alternate duties under that rating chain, until the investigation is resolved. If the rated officer is suspended and subsequently relieved, the period of suspension is nonrated time. If the rated officer is suspended and subsequently placed back to duty (not relieved), the period of suspension is recorded as evaluated time on the*

---

[8] Plaintiff also notes that an examination of the plaintiff's relief for cause/referred OER will show that the end date of the OER should actually be September 19th, 2009 as all time after this date should have been non-rated.

*next OER.*

*c. If Relief-for-Cause is contemplated on the basis of an informal AR 15–6 investigation, referral procedures contained in that regulation will be followed before the act of initiating or directing the relief.* This is *irrespective of the fact that the resultant report will also be referred to the rated officer as described in paragraph 3–34. This does not preclude a temporary suspension from assigned duties pending application of the procedural safeguards contained in AR 15–6. Action to relieve an officer from any command position will not be taken until after obtaining written approval from the first general officer in the chain of command of the officer being relieved, as required by AR 600–20.*

In reviewing the events that unfolded involving the plaintiff; 1) he was relieved of command based on an informal AR 15-6 Report of Investigation and was never accorded any of the procedural protections required from the defendants.  2) prior to receiving a relief for cause/referred officer evaluation report and letter of reprimand, he was also denied the AR 15-6 ROI [though the plaintiff requested numerous times] to rebut it.  Additionally, he has never been given the opportunity to rebut the AR 15-6 ROI so that the plaintiff could have his local security clearance reinstated that has been suspended since September of 2009.

The requirements of Army Regulation 15-6, Army Regulation 623-105, and Army Regulation 623-3 state that regardless of if a person is a respondent or not, they are entitled to specific procedural protections, none of which were followed by the defendants in this action. Those requirements were to; *(1) Notify the person in writing of the proposed adverse action and provide a copy, if not previously provided, of that part of the*

*findings and recommendations of the investigation or board and the supporting evidence on which the proposed adverse action is based. (2) Give the person a reasonable opportunity to reply in writing and to submit relevant rebuttal material. (3) Review and evaluate the person's response.* In other words, to receive a copy of the AR 15-6 Report of Investigation and the opportunity to rebut the contested AR 15-6 Report of Investigation. None of which occurred.

Most interestingly, the defendants put forth the incredible argument[9] that the Relief for Cause/Referred OER and the Letter of Reprimand are amazingly not related to the hotly contested AR 15-6 Report of Investigation. This argument had also been made to the plaintiff directly by LTC Jerry Morrison and the [then] Inspector General COL David Alexander[10]. However, unbeknownst to the plaintiff, the defendants intended for the plaintiff to believe their willful and intentional bad faith misrepresentations and the defendants instead used the AR 15-6 Report of Investigation against the plaintiff, while willfully, intentionally, arbitrarily, and capriciously denying him the right to rebut the AR 15-6 Report of Investigation as they were required to do. These intentional misrepresentations and the willful, intentional, arbitrary, and capricious denial of the plaintiff of the right to rebut the AR 15-6 Report of Investigation

---

[9] See Doc No 14-1 Page 12 in Defendant's Motion to Dismiss
[10] See attached e-mail from the [then] Command Inspecting General for the KY National Guard, COL David Alexander as sent to the plaintiff; attached as Exhibit "D"

("LOR") was based so that the plaintiff would have been able to properly rebut the very basis of the LOR.

Specifically, Army Regulation 600-37 PARA 3-2 'Policies', states pertinently that in tendering a Letter of Reprimand to a soldier, unfavorable information will not be filed in an official personnel file unless the recipient has been given the chance to review the documentation that serves as the basis for the proposed filing and make a written statement, or to decline, in writing, to make such a statement. As the plaintiff was explicitly denied the opportunity to receive much less rebut the AR 15-6 ROI, he was unable to make a written statement to include with the LOR that was based on the AR 15-6 ROI and the LOR that was placed in the plaintiff's Official Military Personnel File.

1LT Michael Vaughan was clearly unable to address the underlying reasons for the Letter of Reprimand much less the relief for cause/referred OER. However, the AUSA acknowledges that the Letter of Reprimand is also *the culmination of the agency's decision making process*" but makes a fraudulent argument as to why it really isn't an adverse action.  Specifically, the AUSA states in the motion to dismiss[13] that the LOR was never filed in the plaintiff's Official Military Personnel File ("OMPF") [**FALSE**] and misstates the sealed statement of SFC Marian Barry in which he erroneously states that *"[no] letter of reprimand is filed in 1LT Vaughan's OMPF."* The addendum[14] of the defendants gives reasons as to why the AUSA made arguably intentional misstatements

---

[13] See Motion to Dismiss Doc No 14-1 Page 9.
[14] See Amended Document, Doc No 19.

and why the LOR was removed from the plaintiff's Official Military Personnel File after it had been in the plaintiff's file for over two years as it [sic] violated Army Regulations.

This entire case is explicitly about the defendants violating Army Regulations and the plaintiff's procedural due process rights and the plaintiff finds it laughable that the defendants have [again] openly engaged in violating an automatic litigation hold on documents arguably relevant to the underlying cause of action of the plaintiff in this federal lawsuit. With great alacrity, the defendants make the bold statement that because the Letter of Reprimand is not part of the plaintiff's Official Military Personnel File...that ostensibly this does not *"Determine Plaintiff's Rights or Obligations..."* and *"...not a decision from which permanent legal consequences will flow"*. Aside from the intentional spoliation of the evidence that was nothing less than a blatant attempt to effect the subject matter jurisdiction and justiciability of this court regarding this case, the defendants explicitly stated as fact that the LOR was never part of the plaintiff's Official Military Personnel File, intentionally misstated the then sealed statement of SFC Marian Barry that the LOR was not in the plaintiff's OMPF is yet another example of the defendant's bad faith conduct.

However, the plaintiff argues that being relieved from his leadership position as the 207th EN CO Platoon leader, the subsequent relief for cause/referred officer evaluation report, the Letter of Reprimand, and the suspension of the plaintiff's security clearance in September of 2009 are the culmination of the agency's decision making

process as it has dramatically affected the plaintiff in both his civilian and military capacities. Currently the plaintiff has not been able to be promoted for over three years due to the affirmative misconduct of the defendants. Furthermore, the plaintiff is unemployed due to the bad faith actions that resulted in the suspension of his security clearance; to wit, the plaintiff is unable to get a job in his chosen line of work as he was denied the right to rebut the AR 15-6 ROI. The final actions taken against the plaintiff by the defendants in clear violation of his procedural rights have dramatically harmed the plaintiff in this action.

### THE AR 15-6 REPORT OF INVESTIGATION AS IT RELATES TO THE SUSPENSION OF THE PLAINTIFF'S SECRET SECURITY CLEARANCE

The AR 15-6 Report of Investigation was ostensibly used to have the plaintiff's Secret Security Clearance suspended. However, what the defendants conveniently left out of their Motion to Dismiss was that that the plaintiff's Secret Security Clearance was suspended based on an AR 15-6 Report of Investigation that the plaintiff was willfully and intentionally denied the opportunity to rebut. Furthermore, the national (CCF) suspension was based on a fraudulent memorandum[15] submitted by the plaintiff's current Battalion Commander, LTC Dean Gosney.

Pertinently, in the memorandum requesting the revocation of 1LT Michael Vaughan's Secret Security clearance submitted by LTC Dean Gosney on 22FEB2012,

---

[15] Attached as Exhibit "F". Also attached to this is the missing page from the R 15-6 ROI as filed with this court in Vaughan V. Brigham Doc 35-2.

fits the explicit definition of 'Affirmative Misconduct' required for Equitable Estoppel against the Government.

Attached[11] is the memorandum signed by LTC Jerry Morrison in which he explicitly recommends all of the adverse action(s) based on the AR 15-6 Report of Investigation that the AUSA states that the relief of the plaintiff from his leadership position, the letter of reprimand, the relief for cause/referred OER, and the continued suspension of the plaintiff's security clearance really are not based upon. These signed official military documents link with finality the multitude of adverse actions taken against the plaintiff with the AR 15-6 Report of Investigation. Also attached[12], is the memorandum by LTC Jerry Morrison requesting the Withdrawal of Federal Recognition Board based on the AR 15-6 Report of Investigation, and the Relief for Cause/Referred OER, and the Letter of Reprimand.

## THE AR 15-6 REPORT OF INVESTIGATION AS IT RELATES TO THE LETTER OF REPRIMAND ("LOR")

The Letter of Reprimand that the plaintiff received was also based on the contested AR 15-6 ROI in which the plaintiff was accorded specific procedural rights regardless of the filing location of the LOR. Specifically, the defendants violated AR 600-37 in not providing the plaintiff the AR 15-6 ROI on which the Letter of Reprimand

---

[11] Attached with Exhibit "E". This memorandum also requests that the Letter of Reprimand be filed in the plaintiff's OMPF.

[12] Also attached with Exhibit "E".

paragraph 1(a) states: *"A formal investigation completed in September of 2009 found 1LT Vaughan guilty of conduct unbecoming an officer (see encl)."* However, there never was a formal investigation. However, as submitted by the AUSA in his Motion to Quash and as outlined above, from August 13th 2009-August 18th, 2009 there was only an informal AR 15-6 Investigation that involved the plaintiff. Though, the investigating officer made the initial recommendation that the plaintiff should be found to have committed conduct unbecoming an officer, the appointing officer for the AR 15-6 Report of Investigation explicitly **non-concurred** with this recommendation.

## THE AR 15-6 REPORT OF INVESTIGATION AS IT RELATES TO THE WITHDRAWAL OF FEDERAL RECOGNITION BOARD HELD ON JULY 9th 2011 ("WOFR BOARD")

The contested AR 15-6 Report of Investigation and the subsequent relief for cause/referred OER and the Letter of Reprimand were the reasons why a board was convened to determine if the plaintiff's Federal Recognition as a commissioned officer should be withdrawn on July 9th, 2011. Aside from being denied the opportunity to be represented by TDS military counsel[16] at the WOFR board hearing due to the misconduct of the defendants, the defendant's, [again] arbitrarily and capriciously denied the plaintiff the opportunity to rebut the AR 15-6 Report of Investigation at the WOFR Board hearing held on July 9th, 2011. Evidence of this affirmative misconduct was explicitly withheld from this court and the plaintiff as the defendants in collusion

---

[16] See attached WOFR Rebuttal Memorandums attached with Exhibit "G".

with the National Guard Bureau [See KY E.D. Case No. 3:12-CV-34] were refusing to turn over the "edited" transcript and the unedited audio from the WOFR Board Hearing that the plaintiff requested via a FOIA/Privacy Act Request. However, the defendant's required the plaintiff in this action to agree to dismiss with prejudice the FOIA/Privacy Action 3:12-CV-34 in order to get the documents and the unedited audio from the Withdrawal of Federal Recognition Board Hearing held on July 9th, 2011.

Pertinently, LTC Dylan Seitz states in his opening statement of the WOFR Board hearing held on July 9th, 2011 that *"First Army has already decided that the investigation was legally sufficient and that he had an adulterous relationship with a woman not his wife, and that he harassed her after she attempted to end that relationship."* **[Emphasis Added]** . The below excerpt is from the unedited audio recording file vaughan3r as turned over to the plaintiff by the defendants of the withdrawal of federal recognition board hearing held on July 9th, 2011.

*Plaintiff Title: "**LTC Dylan Seitz Opening Statement**"*[17]

**LTC Dylan Seitz:** *In the memorandum that Lieutenant Vaughan received signed by Lieutenant General Miller, the first paragraph states unequivocally, specifically, "You had an adulterous relationship with a woman not your wife and an AR 15-6 investigation found that you harassed this woman after the relationship ended. Your actions negatively affected the good order and discipline of the Kentucky National Guard."*

---

[17] The pertinent transcripts referenced throughout the rest of the document with regard to the WOFR Board Hearing are attached with Exhibit "H", which also has copies of the relevant audio files as turned over to the plaintiff by the defendant's in 3:12-CV-34.

*It didn't say, "You have been accused." It didn't say, "We believe." It said unequivocally, "You had." **The reason why it is in those terms is that has already been decided**. That's why the burden is not on the government to prove anything in this case.*

***First Army has already decided that the investigation was legally sufficient and that he had an adulterous relationship with a woman not his wife, and that he harassed her after she attempted to end that relationship.[Emphasis Added]***

*What Lieutenant Vaughan's role is here is to show why his actions would be justified. Why his actions wouldn't constitute conduct unbecoming. Why his actions wouldn't constitute moral turpitude. Not whether or not the actions happened, but what was his rationale for doing it?*

*I would also remind the board, too, of the appointment order that each of you all received. This was signed by Lieutenant General Bednarek.*

*He states to each one of you all who are named here at the very first paragraph, "A board of officers is hereby appointed to determine whether Lieutenant Vaughan should have his federal recognition withdrawn for moral or professional dereliction in according with NGR 635-101, Paragraph 9." The important part, specifically, "He had an adulterous relationship with a woman not his wife and an AR 15-6 investigation found that he harassed this woman after the relationship ended."*

*Again, this is not to be in question and this isn't what this board is going to be debating on. Now, the burden of proof is also referenced in Lt. General Bednarek's memorandum to each one of you. It says at the end:*

***"Accordingly, the burden of proof rests with the officer to produce convincing evidence that their federal recognition should not be withdrawn."***

During deliberations of the WOFR Board, the president of the board of officers had a question. That discussion is pertinently excerpted below from audio

recording vaughan7r;

## *Plaintiff Title: "Board Deliberation Question"*

**COL JEFFERY MISER:** *That's my question. Am I judging or coming to a conclusion that he did commit these acts? Because that's not what the recorder [LTC Dylan Seitz] said. He's saying he's done these acts.*

**LTC JOHN K. MILLS:** *First Army has already made a finding that he committed the acts.*

**COL JEFFERY MISER:** *I got that. But what is my determination? If First Army has already concluded he's done these acts, what am I judging?*

**LTC JOHN K. MILLS:** *You're judging whether or not he now has shown cause as why he should remain an officer in The United States of America.*

**COL JEFFERY MISER:** *So I am not judging whether I believe him or don't believe that he did this, and I am not judging whether he provided me any proof that he didn't do this. My job, you're telling me, is he's done it. The army says he's done it. I'm just determining since he did do it, we determine if he stays in the army or not.*

**LTC JOHN K. MILLS:** *I believe that's pretty much correct, sir.*

**COL JEFFERY MISER:** *I need to know...*

**LTC JOHN K. MILLS:** *The First Army [inaudible 01:35] . The First Army has made the determination he did these acts. You are judging whether or not those acts constitute any of these things listed under moral and professional dereliction. Given the fact he did this, does this constitute anything involved in that list? I don't mean he already constituted the three highlighted ones.*

**COL JEFFERY MISER:** *[inaudible 01:58] .*

**LTC Dylan Seitz:** *And they accepted it.*

**LTC JOHN K. MILLS** : *They accepted what you said [inaudible 02:11] . [crosstalk]*
**[Plaintiff's Note,** *the 'gist' of the 'crosstalk' involved 1LT Michael Vaughan angrily arguing that he had never been accorded the right to rebut the AR 15-6 Investigation..]*

**COL JEFFERY MISER:** *It's not going to give contention. I'm just...here's what I'm looking at. What's my authority? What is the authority of this panel? That's all I care about. You know what I'm saying? What I'm hearing is the Army has concluded that Lt. Vaughan has harassed this individual, has concluded that Lt. Vaughan committed adultery. What I'm hearing now is we're not voting guilty/not guilty. We're voting is adultery... [inaudible...]*

Furthermore, the WOFR board decision and findings are pertinently excerpted below from audio recording vaughan8r as presented to the plaintiff by the defendants;

### *Plaintiff Title: "WOFR Board Decision"*

*[inaudible conversation]*
**LTC Dylan Seitz:** *[2:00] OK. This hearing will come to order. Let the record reflect that Lieutenant Colonel White, Colonel Mizer, Lieutenant Colonel Riddle, Col. Harris and Lieutenant Colonel Mills and Lieutenant Vaughan are present.*

**COL JEFFERY MISER:** *[2:22] OK. The process, as I see it, is that this time the Board, through me, needs to announce its findings and recommendations. After announcing verbally those findings and recommendations, this Board will be concluded.*

**LTC JOHN K. MILLS:** *[2:37] Yes, Sir.*

**COL JEFFERY MISER:** *[2:38] OK. All right. After deliberation, Lieutenant Vaughan, you will today be told the verbal findings and recommendations of this board. That will be followed up with written findings, with specifics regarding the findings of this board. Correct?*

**LTC JOHN K. MILLS:** *[2:58] That is correct, Sir.*

**COL JEFFERY MISER:** *[2:59] OK. The board has deliberated and it will be the findings and recommendations of this board that your federal recognition be withdrawn. That concludes this board. Correct?*

**LTC JOHN K. MILLS:** *[3:17] Unless...the only thing is you are saying followed up in written findings.*

**COL JEFFERY MISER:** *[3:27] Written findings.*

**LTC JOHN K. MILLS:** *[3:27] Findings of fact?*

**COL JEFFERY MISER:** *[3:28] Exactly.*

**LTC Dylan Seitz:** *[3:29] OK.*

**LTC Dylan Seitz:** *[3:31] Yes sir. What we will do is we will prepare the specific findings regarding each allegation. Probably appropriate for you to address the two allegations and which of the allegations are supported and which of the... [crosstalk]*

**COL JEFFERY MISER:** *[3:55] Well, the allegations -- and that's why I brought everyone back in -- <u>it was not this board to determine whether Lieutenant Vaughan did not commit adultery or did not do harassment.</u> That's not the purpose of the board. [4:13] The purpose of this board was for Lieutenant Vaughan to give evidence that he did not do, for those two accusation[18]s.*

**COL JEFFERY MISER:** *[4:22] It is important to show cause why... [crosstalk]*

---

[18] The accusations that; "He had an [**1**]adulterous relationship with a woman not his wife and [**2**] an AR 15 6 investigation found that he harassed this woman after the relationship ended." Plaintiff was denied the opportunity to rebut the very basis of these two allegations, IE: the AR 15-6 that encompassed these base allegations.  As LTC Mills the legal adviser instructed during the board and the board president during board deliberations; "**LTC JOHN K. MILLS:** The First Army [inaudible 01:35]. The First Army has made the determination he did these acts. You are judging whether or not those acts constitute any of these things listed under moral and professional dereliction. Given the fact he did this, does this constitute anything involved in that list?"

**COL JEFFERY MISER**: *[4:26] But the first thing is, the burden of proof was for Lieutenant Vaughn to show that, first of all, he did not do those. Or that if he did do them, there was reason that he remain with his federal recognition.*

**LTC JOHN K. MILLS**: *[4:42] Just as an example to that latter point, sir, could you just -- for instance, a soldier who admits to using drugs in violation of the regulations. However they come in and provide, they admit to it and provide proof, they've gone to rehabilitation. They [inaudible 05:01] service record, otherwise they're showing other causes why. Even though they've done the drugs and they did testify, they're worthy of being kept in [inaudible 05:14] . That's just an example.*

**COL JEFFERY MISER**: *[5:15] I got you. But this is what I'm going to do. I have given the verbal recommendation of findings of the board and I'm just going to stop at that. They will be submitted in writing and presented to Lieutenant Vaughan.*

**LTC Dylan Seitz**: *[5:28] Yes sir. You and the other members will have an opportunity to view those and sign off on them.*

**LTC JOHN K. MILLS**: *[5:34] We're going to explain exactly what the findings and conclusions are.*

**LTC Dylan Seitz**: *[5:38] OK.*

**LTC JOHN K. MILLS**: *[5:39] All right. Thank you. Thank you. [inaudible background conversation]*

**1LT Michael Vaughan**: *[5:54] Mr. President, will I be able to get a copy of the transcript for these proceedings, sir?*

**LTC Dylan Seitz**: *[5:57] Yes. Defense is entitled to a copy of the transcript and all the evidence as part of the certification of record and be allowed to make any comments regarding any received [indecipherable 06:08] .*

**1LT Michael Vaughan**: *[6:11] OK.*

*LTC JOHN K. MILLS: [6:19] Sir, we should probably also make sure that all these copies of this material are hand delivered.*

*COL JEFFERY MISER: [6:25] And I would like to clear the boardroom at this time, with the exception of you. OK?*

*LTC Dylan Seitz: [6:30] Yes sir.*

*COL JEFFERY MISER: [6:31] All right.*

The Withdrawal of Federal Recognition Board Hearing explicitly gave 'Res Judicata' effect to the contested AR 15-6 Report of Investigation that contained the allegations of adultery. Furthermore, the plaintiff specifically alleges that the defendants have again misstated the record by stating as fact that no 'findings of fact' were made. The record was clear that findings of fact were made contrary to the assertions of (3 Star) Lieutenant General Bednarek and his deputy Chief of Staff, COL Shane M. Deverill. Specifically, the board president stated "*COL JEFFERY MISER: [3:55] Well, the allegations -- and that's why I brought everyone back in -- it was not this board to determine whether Lieutenant Vaughan did not commit adultery or did not do harassment. That's not the purpose of the board. [4:13] The purpose of this board was for Lieutenant Vaughan to give evidence that he did not do, for those two accusations*[19]." IE: that the plaintiff failed to justify his actions and thus show cause as to why he should retain

---

[19] The accusations that; "He had an [1] adulterous relationship with a woman not his wife and [2] an AR 15 6 investigation found that he harassed this woman after the relationship ended." Plaintiff was denied the opportunity to rebut the very basis of these two allegations, IE: the AR 15-6 that encompassed these base allegations.

his commission. Findings of fact were made, but the defendant's are again trying to hide their misconduct of [again] denying the plaintiff the opportunity to rebut the AR 15-6 ROI. The very same AR 15-6 Report of Investigation that the defendants admit that the plaintiff was denied the opportunity to rebut.

Plaintiff 1LT Vaughan states that any use of the AR 15-6 Report of Investigation constitutes a violation of the substantive due process rights accorded to the plaintiff by Army Regulations, the administrative procedure act, and the fifth an fourteenth amendments of the U.S. Constitution as he was and has been intentionally denied the right to rebut the AR 15-6 ROI and after three years and after final action has long been taken against the plaintiff is arguably far too late to happen now.

It is also the plaintiff's contention that no adverse action can ever be taken against the plaintiff based on the AR 15-6 Report of Investigation [or the evidence contained therein] as the plaintiff was explicitly and intentionally denied his procedural rights. It is also the plaintiff's contention that **ALL** adverse actions taken against him based on the AR 15-6 Report of Investigation to date were improper.

## IV.   CONCLUSION

This case is ultimately very simple…was 1LT Vaughan supposed to have been given the opportunity to rebut the AR 15-6 Report of Investigation?  Army Regulation 15-6 PARA 1-9 (c), Army Regulation 623-105 PARA 3-50(a), Army Regulation 623-3 PARA 3–58 (2007 Version), and Army Regulation 600-37 PARA 3-2 explicitly show that

he was indeed supposed to have been given that right <u>prior to</u> adverse action being taken against him. Prior to him being relieved as a platoon leader, prior to his being given a relief for cause/referred officer evaluation report, prior to 1LT Vaughan having a Letter of Reprimand based on the AR 15-6 ROI placed into his Official Military Personnel File.

However, this procedural right was willfully, intentionally, arbitrarily, and capriciously denied prior to final action being taken despite Army Regulations mandating it.  The question then revolves around why? The plaintiff explains that on February 16th, 2010, the plaintiff filed his lawsuit 'Vaughan v. Brigham 3:10-CV-5' and immediately notified the defendants of his filing that specific action and simultaneously his intent to file suit against COL Rodney Hayes due to his tortuous actions against the plaintiff in his civilian capacity as a civilian contractor for RAM Inc.  That very same day, the Relief for Cause/Referred OER and Letter of Reprimand Documents were created by LTC Jerry Morrison.  Plaintiff states that the true purpose of the defendants is to protect COL Rodney Hayes by any means necessary that included interfering in civil litigation with Privacy Act Violation(s) [<u>that included incomplete documents that failed to show that the appointing officer had non-concurred with the finding of conduct unbecoming an officer..</u>], intentional spoliation of evidence, lying to this court, intentional denial of documents to the plaintiff he was entitled to [KY E.D.: 3:12-CV-34, and 3:10-CV-5 (Subpoena Duces Tecum)], and blatantly lying to other federal agencies

to attack the plaintiff's security clearance in order to discredit & materially harm the plaintiff in this action.

Again, the question before the court ultimately is; 'Was 1LT Michael Vaughan supposed to have been accorded the right to rebut the AR 15-6 Report of Investigation prior to adverse action being taken?' Everything else falls into place once that obvious answer is decided by this court who ultimately is the guardian of military due process of which the plaintiff was explicitly and intentionally denied.

**Wherefore,** plaintiff 1LT Michael Vaughan respectfully requests that this court deny the defendant's Motion to Dismiss.

Dated: August 31st, 2012

Respectfully submitted,
BY:

MICHAEL DEAN VAUGHAN
Plaintiff (*PRO SE*)
2010 Scott Blvd.
Covington, KY 41014
(513) 365-8080
mvaughan@kyguardgonewild.com